SMITH *et al. v.* WILCOX *et al.*

A contract for the publication of an advertisement in a newspaper to be issued and sold on Sunday, is void.

APPEAL from the Supreme Court. The plaintiffs, the proprietors of the "Sunday Courier," a newspaper printed and published in the city of New York, brought their action against the defendants to recover the agreed price of publishing an advertisement of and for the defendants in such newspaper for six months, in pursuance of a contract made with the agent of the defendants. The making of the contract and the performance of the duty by the plaintiffs was proved. It was also proved, that the Sunday Courier was a weekly paper purporting to be published on Sunday morning, that it was dated on Sunday and issued, that it went to press on Saturday night at times varying from 10 or 11 o'clock Saturday night to 2 or 3 o'clock Sunday morning. That it was one "of the Sunday papers;" that the proprietors commenced issuing and selling the papers early Sunday morning; that they had a public place

for selling the papers, opened for everybody to buy. The cause was tried before ROSEVELT, J., who nonsuited the plaintiffs upon the ground that the contract for the publication of the advertisement, and its publication, were in contravention of the law for the observance of Sunday, and the judgment was affirmed by the Supreme Court sitting in the first district. The plaintiffs appealed to this court.

*John H. Reynolds*, for the appellants.

*John K. Porter*, for the respondents.

ALLEN, J. Our statute regulating the "Observance of Sun day," prohibits all servile labor or work on that day excepting "works of necessity and charity," unless done by those who keep Saturday as a holy day and whose labor does not disturb other persons in the observance of the first day of the week as holy time. It also prohibits the exposure to sale on that day of "any wares, merchandise, fruit, herbs, goods or chattels," except meats, milk and fish, which may be sold at any time before nine o'clock in the morning. (1 R. S., p. 676, §§ 70, 71.) The statute is in harmony with the religion of the country and the religious sentiment of the public, and for the support and maintenance of public morals and good order. Its design is not to enforce the conscience or compel the religious observance of the day or compel conformity to any religious rites or ceremonies, but simply to secure to the day that outward respect and observance which is due to it as the acknowledged Sabbath of the great mass of the people, to protect the religion of the community from contempt and unseemly hindrances, and to its professors the liberty of quiet and undisturbed worship on the day set apart for that purpose. Acts not interfering with the benevolent design of the Sabbath by disturbing and hindering those who for themselves and families desire to enjoy and improve it are not prohibited by this statute; and acts not prohibited do not take their character from the day on which they are done, but are lawful or unlawful in reference to the general laws of the land. The acts

Smith *v.* Wilcox.

regulating the observance of the Sabbath are remedial statutes and to be construed liberally in respect to the mischiefs to be remedied.    Chief Justice BEST, in speaking in terms of warm commendation of the judgment of BAYLEY, J., in *Fennell* v. *Ridler* (5 B. & C., 406), says: "In one of the most able judgments ever delivered, he [BAYLEY] says, that the most liberal construction must be put on that statute [29 Car. II, c. 7, for the protection of the Sabbath], because it is in affirmance of the religion which is the basis of the law of this country." *Smith* v. *Sparrow* (4 Bing., 84).    BAYLEY, J., in the case cited (*Fennell* v. *Ridler*), says further.    "The spirit of the act is to advance the interests of religion, to turn a man's thoughts from his worldly concerns, and to direct them to the duties of piety and religion; and the act cannot be construed according to its spirit unless it is so construed as to check the course of worldly traffic."    Upon the principle that the statute was entitled to such a construction as would promote the ends for which it was passed, and that the act in question in that case was within the mischief intended to be suppressed and within the word made use of to suppress it, judgment was given against the plaintiff: the court holding that a horse dealer could not maintain an action upon a contract for the sale and warranty of a horse made by him upon a Sunday.    In the same case the narrow construction put upon the act by the same judge in *Bloxsome* v. *Williams* (3 B. & C., 232), is disapproved.    PARK, J., in *Williams* v. *Paul* (6 Bing., 653), says, "I should be sorry to be supposed to recede from the cases decided on this point and the principle established to enforce the observance of the Lord's day, which tends so eminently to the advantage of society, since no laws can be of avail except in so far as they are founded on religion."    The English statute differs in terms from our own, but they were enacted in the same spirit and with the same general purpose; and are entitled to the same liberal construction in furtherance of the remedy and the suppression of the mischief contemplated. The same view has been taken of the policy and character of the statute in our own courts.    NELSON, J., in *Northrup* v.

*Foot* (14 Wend., 248), says, " It is a remedial statute and should be liberally construed." Full effect has been given to the statute whenever it has come before our courts. While acts not within the inhibition have been treated as valid, although done on Sunday, and contracts not within the spirit of the act have been enforced although made on that day, all acts within the statute have been regarded as illegal and contracts prohibited to be made on that day if then made, and all contracts for a violation of that law and the performance of acts on Sunday not lawful to be done on that day, have been regarded as void and have not been enforced. No judicial act can be performed on Sunday; and, hence, an award published on that day is void at common law. (*Story* v. *Elliott*, 8 Cow., 27.) An action for deceit in the sale of a horse on Sunday, when all secular business is prohibited on that day, will not lie. (*Northrop* v. *Foot*, 14 Wend., 248.) The contract being void, no action can arise out of it or be maintained depending upon it. The charge of circulating a memorial to the legislature on Sunday was held to present a question of law for the decision of the magistrate to whom application was made for a warrant, and thus furnish a protection to the magistrate when sued for false imprisonment. (*Stewart* v. *Hawley*, 21 Wend., 552.) A clerk in an attorney's office was not allowed to recover of his principal for extra services performed on Sunday. (*Watts* v. *Van Ness*, 1 Hill, 76; *Palmer* v. *The Mayor, &c., of New York*, 2 Sandf., 318; *Dodge* v. *Lambert*, 2 Bos., 570.)

There is no dispute as to facts. The only evidence bearing upon the question was that elicited upon the cross-examination of a single witness of the plaintiffs and the nonsuit was granted upon the ground that the contract upon which the action was brought, was in contravention of the statute regulating the observance of Sunday. No request was made to submit any question of fact to the jury; no complaint is even made that the court declared the legal effect of the evidence without a settlement of the facts by the jury; and both parties desire a decision of the case upon the merits without regard to the form in which the questions are presented.

There is no evidence that the contract was made on Sunday; and if it was it would not for that reason be void if it did not contemplate and provide for some prohibited service or act to be done on Sunday. In other words, a contract made on Sunday for the publication of an advertisement in a newspaper published on the ordinary business days of the week is not prohibited and would be valid. (*Story* v. *Elliott, supra; Sayles* v. *Smith,* 12 Wend., 57; *Boynton* v. *Page,* 13 id., 425.) Neither is there evidence to vitiate the contract upon the ground that the work of setting up and printing either the advertisement or the paper, which is servile work and labor, was to be done or was contemplated to be done on Sunday. That work might well have been done on any other day of the week, and was done in whole or in part on Saturday. It was not necessarily done, nor was it agreed to be done, on Sunday. What the effect would have been had it appeared that all the work had in fact been done on the Sabbath, if it had been so done for the convenience or pleasure of the plaintiffs, neither the contract nor the nature of the service contemplating any such thing, need not be considered.

The service to be rendered by the plaintiffs was the publication of an advertisement in a Sunday newspaper. There is no pretense that it was a work of necessity and charity, either to publish the paper or the advertisement, even if it could be brought within the section of which the exception in favor of works of "necessity and charity" forms a part. The advertisement was published with, and as incidental to, the publication of the paper, and the contract must be assumed to have contemplated the service to be performed in the usual way, and as it was, in truth, done. The papers were sold on Sunday at a public place provided by the plaintiffs, the proprietors, for that purpose: that was the publication, and that the service agreed to be performed, and for which they now ask compensation. The publication of the advertisement was to be and was by a public sale of the newspaper in which it was printed, on Sunday. The opening of a place for the sale and the actual selling of newspapers is within the mis-

chiefs which the act for the observance of Sunday was designed to remedy. It disturbs the public peace and quiet; interferes with the proper religious observance of the day: is opposed to good morals: and tends to draw men away from the duties of piety and religion, and cannot be distinguished from traffic in any other article which is the subject of sale in market. It matters not what the character of the paper or the character of the advertisement published for the defendants may have been. Neither were "meats, milk or fish," and therefore were not within the articles excepted from the prohibition, and even if it were within the other section of the statute, it would be difficult to prove that the sale of the most unexceptionable religious newspaper was an act of "necessity and charity."

The statute is very comprehensive and has sought to use terms which would embrace every article which could be sold in market. It prohibits the exposure and sale of all "wares, merchandise, fruit, herbs, goods or chattels." Everything which is the subject of property and which may be exposed to sale must be included under some or one of these terms. A newspaper is the subject of property, and when it is made the subject of sale in places opened for that purpose it is certainly merchandise. Newspapers are made merchandise when they are sold, either at wholesale or retail, as other articles are sold which have ever been usually regarded as merchandise. This mode of publication by selling newspapers in large packages to be resold by the purchaser, or at retail, and by the single paper is of comparatively modern introduction; but as in this way the character of merchandise is given to the paper, the business of selling and exposing to sale the newspapers must be governed by the general laws affecting similar dealing in other articles of merchandise. It is exposing an article to sale that constitutes the offense, and not the character of the article, unless it is among the exceptions in the act. "Goods, wares and merchandise" include all movable property that is ordinarily bought and sold. "Chattels" is more comprehensive than "goods," and includes animate property.

(2 Ch. Pl., 55, n. [r].) The plaintiffs necessarily, in the performance of their agreement by the publication of the advertisement, violated the letter as well as the spirit of the act prohibiting the exposure of merchandise for sale on Sunday, and no action will lie upon such contract. In a sense it was a contract by the plaintiffs for the performance of servile work on the Sabbath. They agreed to publish and circulate the advertisement of the defendants on Sunday by delivering a copy to each of their customers who should buy of them a copy of their paper; and incidentally they agreed to expose for sale and sell on that day their paper containing the advertisement. This was servile work in the same sense that the service of the attorney's clerk was, or that of a salesman in a dry goods store would be. The contract was void, and the judgment must be affirmed.

All the judges concurring,

Judgment affirmed.