GAUTHIER *v.* COLE.

*(Circuit Court, E. D. Michigan.* June Term, 1883.)

1. PLEADING—GENERAL ISSUE—ILLEGAL CONSIDERATION.
    At common law, illegality of consideration may be pleaded under the general issue.
2. SUNDAY—CONTRACT TO RUN BOAT ON—VOID.
    A contract to run a steam-boat upon Sundays is void, and its invalidity is not affected by the fact that it was to run partly through Canadian waters.

On Motion for a New Trial.

This was an action upon a contract to run a steam-boat. Defendants were the owners of a line of steamers running from Bay City to Alpena, upon Lake Huron. Plaintiff was the charterer of a rival steamer, know as the Gazelle, running from the Duck islands upon the Canadian shore of Lake Huron, where plaintiff was largely interested in fishing, by the way of Alpena to Bay City and back. For the purpose of getting the Gazelle off the route, and at the same time of affording plaintiff proper facilities for marketing his fish, plaintiff and defendants entered into the following contract:

"BAY CITY, MICH., September 29, 1881.

"We, the undersigned, owners of the steamers Metropolis, Dove, and Arundel, agree with C. W. Gauthier to send one of our steamers, weather permitting, on the continuation of each Saturday's trip from Alpena, to Duck islands and Cockburn island docks, when notified by said C W. Gauthier or William Overton, his agent, to do so, and to carry fish cars, ice, and other merchandise that said Gauthier may have to ship from Alpena; also all freight, fish, etc., of his own he may have to ship from said islands to Alpena. In consideration of said trips, said Gauthier is to pay us for each trip to Duck islands $100, and each trip to Cockburn island, $120. In consideration, said Gauthier agrees to take the steamer Gazelle off of the route between Bay City and Alpena, Oscoda, and Tawas.

[Signed]

"COLE & HOLT.
"C. W. GAUTHIER."

It appearing from the oral testimony that this contract must be performed on Sunday, if at all, the court stopped the case, and directed a verdict for the defendants. Motion was thereupon made for a new trial.

*F. H. Canfield,* for plaintiff.

*W. H. Wells,* for defendants.

BROWN, J. The contract provided that defendants should, upon request, send one of their steamers, in continuation of its Saturday's trip, from Alpena to the Duck islands or Cockburn island, upon the east shore of Lake Huron. Plaintiff's own testimony showed beyond contradiction that the steamers, upon their Saturday's trips from Bay City to Alpena, did not arrive at Alpena until about 3 o'clock Sunday morning, and that they advertised to leave Alpena for Bay City at 6 o'clock on Monday morning. The contract must,

therefore, be performed between these hours. The testimony further showed that the usual running time from Alpena to the islands and back was 12 hours, and that the steamer would be detained there, lading and unlading, about two hours. That would bring her back to Alpena about 6 o'clock Sunday evening.

Comp. Laws, § 1984, provide that "no person shall keep open his shop, warehouse, or work-house, or shall do any manner of labor, business, or work, except only works of necessity and charity, * * * on the first day of the week." Defendants' contention that this statute must be specially pleaded cannot be supported. It is true that in England, under the pleading rules of Hilary term, 4 Wm. IV., illegality of consideration must have been specially pleaded, (*Potts* v. *Sparrow*, 1 Bing. N. C. 594;) but the rule was otherwise at common law. 1 Chitty, Pl. (6th Ed.) 511. In this state illegality of consideration may be shown under the general issue. *Myers* v. *Carr*, 12 Mich. 69; *Dean* v. *Chapin*, 22 Mich. 276; *Hill* v. *Callaghan*, 31 Mich. 425; *Snyder* v. *Willey*, 33 Mich. 489. This was also held to be the proper practice under the common-law system of pleading by the supreme court of the United States in *Craig* v. *Missouri*, 4 Pet. 410, 426.

It is difficult, in this case, to see how the plaintiff can escape the application of the statute. Not only are contracts made upon Sunday void, but contracts to do any manner of work on Sunday are equally within the inhibition of the act. *Allen* v. *Duffie*, 43 Mich. 5; [S. C. 4 N. W. Rep. 427;] *Smith* v. *Wilcox*, 24 N. Y. 353; *Berrill* v. *Smith*, 2 Miles, (Pa.) 402; *Nodine* v. *Doherty*, 46 Barb. 59; *Adams* v. *Gay*, 19 Vt. 358; *Slade* v. *Arnold*, 14 B. Mon. 287; *Palmer* v. *City of New York*, 2 Sandf. 318; *Phillips* v. *Innes*, 4 Clark & F. 234.

Nor does the fact that the contract is maritime take it out of the operation of the statute. While the ordinary labor incident to the navigation of a vessel must undoubtedly go on upon Sunday as well as other days, it is neither usual, nor, under ordinary circumstances, lawful, to load or unload upon that day, or to require seamen to do any manner of work not demanded by the exigencies of the voyage. Thus, in *Pate* v. *Wright*, 30 Ind. 476, plaintiffs agreed to purchase of defendants 3,000 barrels of flour for the purpose of shipping the same to New Orleans, and, in anticipation of the completion of said purchase, engaged a steamer to take the flour on board, and transport the same to New Orleans. Defendants were notified that the steamer would stop at the place designated for the delivery of the flour on Sunday. The court held that they were under no obligation to deliver the flour upon that day, although there was danger at that time of navigation being closed by ice, so that the steamer might be unable to complete her voyage. This, it must be admitted, is an extreme case. In the case of the bark Tangier, (*Richardson* v. *Goddard*, 23 How. 28,) a distinction was drawn between a general fast day appointed by the governor of the state and Sunday, and it was

held that there was neither a law of the state forbidding the transaction of business on that day, nor a general usage ingrafted into the commercial and maritime law forbidding the unlading of vessels. See, also, *Powhattan Steam-boat Co.* v. *Appomattox R. Co.* 24 How. 247. In neither of these cases was it intimated that the Sunday laws were inappliable to maritime transactions.

Neither is this case affected by the fact that a portion of each voyage was to be performed within Canadian waters, and that the law of Canada upon the subject of Sunday observance is not proven. Both the inception and completion of performance were to take place in this state, and the mere circumstance that, in the course of their trips, the steamers must pass beyond the boundaries of the state, does not free the contract from its taint of illegality.

A new trial must be denied.