## Leberak et al. v. Mayor and Council of the City of Chester

*Edwin A. Howell*, for plaintiffs.
*Louis A. Bloom*, city solicitor, for defendants.

TOAL, J., July 13, 1950.—This was a bill in equity filed by plaintiffs to enjoin defendants from charging or collecting any tax from them under the provisions of Ordinance No. 73 of 1948 of the City of Chester, Pa., which provides for the imposition on and collection of a mercantile license tax from:

(1) Wholesale vendors of or dealers in goods, wares, and merchandise; that is, those persons who sell to vendors of or dealers in goods, wares and merchandise.

(2) Retail vendors of or dealers in goods, wares and merchandise; that is, those vendors or dealers who are not wholesale vendors or dealers.

The ordinance by its terms exempted from taxation a business furnishing services in part or whole and taxed only that part of the business dealing in goods, wares and merchandise.

The bill avers that plaintiffs are residents and citizens of the City of Chester, Delaware County and State of Pennsylvania; that the City of Chester is a city of the third class and that the other defendants are its mayor and council and collector of taxes; that on or about December 28, 1948, defendants, members of council acting for the City of Chester, duly passed an ordinance known as Mercantile License Tax Ordinance No. 73 of 1948 and on March 29, 1949, passed a resolution "in order to carry the said ordinance into effect", and by reason whereof they have attempted to impose a tax upon "vendors and dealers at wholesale and retail in goods, wares and merchandise"; that plaintiffs are each independent distributors of newspapers in certain districts of the City of Chester and are not "vendors or dealers in goods, wares and merchandise" of any nature or kind; that there are a large number of other distributors of newspapers in the City of Chester, constituting with plaintiffs herein, a class too numerous to join as party plaintiffs herein, and plaintiffs file this bill on their own behalf and in behalf of all the others

in this class of distributors who desire to join herein; that plaintiffs and the class they represent individually constitute very largely the entire distribution system of certain newspapers (the Chester Times, the Evening Bulletin, the Philadelphia Inquirer and other newspapers of public circulation within the City of Chester), and except for certain stores and newsstands which are large dealers and which are served by the newspapers direct, are the main means of distribution in the city; that the entire business of plaintiffs is conducted as follows: they solicit subscribers or readers to the newspapers by themselves, their employes and agents; call for the papers where instructed by the publisher, procure the number of papers required to meet the requirements of their subscribers and cause the papers to be distributed to them, collecting the bills therefor from their subscribers weekly or as desired and paying the publishers for them weekly or monthly; that they do not maintain any store where papers or any other goods, wares or merchandise are offered for sale and they do not sell or offer for sale any newspapers or other goods, wares or merchandise at their office, warehouse or place of business; that the Chester Times, the Philadelphia Evening Bulletin and the Philadelphia Inquirer are newspapers of general circulation and maintain as a part of their distribution systems the facilities of plaintiffs; that the business of plaintiffs and of the class for which they speak is the furnishing of services in the distribution of newspapers from the publisher to the subscriber and for such services they are compensated by being allowed to retain out of the collections made a certain amount per paper; that both the prices at which the papers are supplied to the subscribers and the amount of commissions or compensation to plaintiffs are fixed by the publisher without any right on the part of the distributor to make any changes; the bill further prays for a restraining order

to prevent the City of Chester from imposing the mercantile tax upon plaintiffs and others similarly situated on the ground that they are not engaged as dealers or vendors in goods, wares and merchandise and that the taxing ordinance be declared by the court as unconstitutional and void respecting the collection of the tax from distributors of newspapers. Defendants filed an answer to the bill which in essence demands proof of the material averments set forth and further avers that defendants are subject to the terms of the Mercantile Tax Ordinance as "vendors or dealers in goods, wares and merchandise". The answer also prays that the bill be dismissed.

From the bill, answer and the testimony we make the following

### Findings of Fact

1. The court has jurisdiction of the parties and of the subject matter.

2. That plaintiffs are residents and citizens of the City of Chester, Delaware County, State of Pennsylvania.

3. That the City of Chester is a city of the third class of the State of Pennsylvania and that the other defendants are its mayor and council and collector of taxes.

4. That on or about December 28, 1948, defendants, the members of council acting for the City of Chester, duly passed an ordinance known as the Mercantile License Tax Ordinance No. 73 of 1948, effective as of February 1, 1949; and by reason whereof, by sections 2(b), (c) and (d) of this ordinance a mercantile license tax was imposed upon any person who is a dealer in or vendor of goods, wares and merchandise.

5. By resolution passed on March 29, 1949, promulgating certain regulations known as the Mercantile License Tax Regulations, in order to carry into effect the proper administration and collecting of taxes under

the ordinance, it is provided in article 2(a) that the license and tax provisions of the ordinance apply to retail vendors of or dealers in goods, wares and merchandise, i.e., those vendors who are not wholesale vendors or dealers; and further provides that a person must comply with the license and tax provisions with respect to his business in goods, wares and merchandise, where his business is in part providing services and in part the dealing in goods, wares and merchandise.

6. Approximately 9,000 of the total number of newspapers published by the Chester Times daily are sold to individuals by subscription in the City of Chester and delivered to houses of the subscribers by newsboys, who are hired and employed and controlled by plaintiffs.

7. Plaintiffs also sell by the subscription method, in addition to the Chester Times, the Evening Bulletin, Philadelphia Inquirer and Daily News, and deliver the same to the subscribing homes through newsboys who are hired, employed and controlled by plaintiffs.

8. All of plaintiff newsdealers selling newspapers operate their business in the same method and have similar arrangements with the publishers.

9. By reason of the contractual relationship between the publishers and the newsdealers, the following takes place:

(a) Newsdealers order each day the number of papers which they have sold to individual subscribers.

(b) Newsdealers cannot return any papers ordered and must pay to the publishers the amount fixed to be paid for each paper ordered by the newsdealer from the publisher, which in the case of the Chester Times is $3\frac{1}{3}$ cents per paper.

(c) The numbers of papers ordered by the newsdealers varies each day, and they must make payments weekly to the publishers for the papers which they have daily ordered and secured regardless of their losses in collections, and without accounting to the publishers

as to collection of the sales price of newspapers from subscribers.

(d) The publishers accept no responsibility for, nor have any interest in, the collection of the moneys due from the subscribers to the newsdealers, which sales price is collected usually by the newsboys employed by the newsdealers either semimonthly or by billing from the newsdealers monthly, an arrangement under the control and discretion of the newsdealers.

(e) The newsdealers are not employed by the publishers and are not on the payrolls of the publishers.

(f) The newsdealers fix the salaries of the newsboys, pay for the costs of running their own trucks, carry their own insurance, and pay their general business overhead from their sales of newspapers, without any control by the publishers, and therefore, have full discretion as to their business expenditures, all of which determine the amount of net profit which they can earn.

(g) The newsdealers have no interest in the business of the publishers, particularly as it pertains to the profits and losses of the publisher's business, and conversely, the publishers have no interest in the profits and losses of the newsdealers' business.

(h) The newsdealers provide their own trucks, equipment and facilities and carry on their business matters as newsdealers, such as the keeping of records as to the subscribers, the daily orders, the collections and payments of their accounts, their expenditures, by maintaining office space in their homes, from where they operate the same, and require no stores, newsstands or other place for the sale of newspapers.

(i) The newsdealer may sell his business if he so desires.

(j) There is no limitation on the amount of papers which plaintiff newsdealers can sell through subscriptions, nor the profits which they can earn.

By reason of the contractual relationship between

the newsdealers and the newsboys, the following takes place:

(a) The newsboys are selected and employed by the newsdealers who stand responsible for, and have full charge and control of, their withholding taxes, social security withholding, provisions for workmen's compensation, their hours of employment, their individual assignments, their dealings in collections from the subscribers, their dismissals, and the amount of their salary and responsibility for the payment thereof.

(b) The newsboy employes of plaintiff newsdealers are not engaged by the publishers and are not controlled or supervised by the publishers, and account directly to the newsdealers only.

10. Although subscription campaigns are conducted by the publishers, it is for the benefit of the newsdealers who secure thereby new customers.

11. The arrangement existing between the publishers and plaintiff newsdealers is the sole method of providing for the sale of the newspapers to home subscribers.

## Discussion

Plaintiffs filed their bill to restrain the City of Chester from imposing and collecting a mercantile tax from them under the terms of the taxing ordinance which places a tax on "vendors of or dealers in goods, wares and merchandise". They maintain that they are not *vendors of or dealers in goods, wares and merchandise* because they are merely engaged in the distribution of certain daily newspapers directly to subscribers who receive the papers at their homes from carrier boys who are employed by plaintiffs. They further maintain that they merely render a service by distributing the papers to the individual subscribers and should therefore not be subject to the tax under the terms of the ordinance itself. Further, they main-

tain that the attempt to place a tax upon the distribution of newspapers of general circulation is void and unconstitutional as an infringement of the constitutional guarantee of "freedom of the press."

We cannot agree with the contentions of plaintiffs, for it is clear from the record that they are engaged in the sale of newspapers for a price in the City of Chester and that they are independently in business for this purpose. There is no question that newspapers are classified as "goods, wares and merchandise": Smith v. Wilcox, 24 N. Y. 353, 358, 82 Am. Decisions 302; Newcastle City v. Treadwell, 35 Pa. Superior Ct. 30. It therefore follows that as plaintiffs deal in and sell newspapers they are classified as "vendors" and "dealers" and are subject as such to the payment of the tax imposed by the ordinance.

In the case of People v. Passafume, 22 N. Y. S. (2d) 785, defendant was charged with violating an ordinance by canvassing from house to house to sell newspaper subscriptions without a permit. The ordinance required that canvassers who go from house to house to sell goods by sample and to take orders for future delivery obtain licenses. Defendant did not apply for a permit. His defense was that the ordinance did not apply to the business of selling newspaper subscriptions and that such an application of its provisions would abridge the freedom of the press in violation of the State and Federal Constitutions.

The ordinance did not mention newspapers. It related to the sale of goods. Defendant argued that newspapers are a service rather than goods or merchandise. In Smith et al. v. Wilcox et al., 24 N. Y. 353, 82 Am. Dec. 302, the court of appeals held that newspapers are merchandise within the meaning of a statute prohibiting the sale of "goods, wares and merchandise" on Sunday. Also, see Newcastle City v. Treadwell, 35 Pa. Superior Ct. 30. The ordinance, therefore, ap-

plied to one who solicits newspaper subscriptions. The court stated further: "Freedom of speech and of the press are guaranteed by the . . . Fourteenth Amendment of the United States Constitution". The ordinance does not prohibit the free distribution of anything. It regulates sales, not gifts. There is a fundamental difference between the regulation of the business of selling goods and interference with the free distribution of printed matter. That distinction was recognized by the Supreme Court in Schneider v. Town of Irvington, 308 U. S. 147, 60 S. Ct. 146, 84 L. Ed. 155. The Irvington ordinance expressly prohibited unlicensed persons from distributing circulars and was held unconstitutional under the fourteenth amendment. The Supreme Court said, however: "We are not to be taken as holding that commercial soliciting and canvassing may not be subjected to such regulation as the ordinance requires."

The constitutional guarantees of freedom of speech and of the press were intended to secure to individuals the right to express and disseminate their views without governmental interference. They were not designed to confer special privileges upon those engaged in the business of publishing and lecturing. Anyone who has a message to impart may state it publicly without official censorship: Hague, Mayor, et al. v. Committee for Industrial Organizations et al., 307 U. S. 496, 515, 59 S. Ct. 954, 83 L. Ed. 1423. He may also circulate his ideas by distributing pamphlets, tracts and other printed matter. But when the speaker charges admission to the lecture hall or the writer offers his work for sale, he engages in commerce like any other merchant and becomes subject to reasonable, necessary regulation. Otherwise a lecturer could not be taxed upon the proceeds of his lectures nor could a newspaper be required to make social security payments for the benefit of its employes. The immunities

guaranteed by the Bill of Rights are personal in their nature. Freedom of the press means that newspapers may print what their publishers choose but that privilege should not be twisted into license to escape commercial regulations affecting persons engaged in other business pursuits: People v. Passafume, supra.

To say that plaintiffs in the instant case should be exempt from the tax imposed on all other "vendors and dealers of goods, wares and merchandise" because they dealt in and sold newspapers to individual subscribers would carry the theory of freedom of the press far beyond anything intended by the Bill of Rights. We must find that plaintiffs are "vendors and dealers in goods, wares and merchandise" and as such must pay the tax as provided in the ordinance.

The bill in this case must be dismissed.

### Conclusions of Law

1. The court has jurisdiction of the parties and of the subject matter.

2. The Mercantile License Tax Ordinance is a tax on vendors or dealers in goods, wares and merchandise.

3. Plaintiffs are vendors or dealers in goods, wares and merchandise and as such are subject to the tax imposed by the tax ordinance.

4. The city has met the burden imposed upon it to show that plaintiffs are subject to the provisions of the Mercantile License Tax Ordinance.

5. Plaintiffs are not engaged in performing services but are engaged as vendors or dealers in goods, wares and merchandise.

6. The instant ordinance was intended to apply to plaintiffs, who are engaged in selling of newspapers to home subscribers.

7. Plaintiff newsdealers are not engaged in performing the service of delivering newspapers but maintain their own independent business for the sale of their newspapers to home subscribers.

8. The application of the ordinance in the instant case is not an attempt to tax a distributive agency of a newspaper, but is a tax on an independent dealer or vendor of goods, wares and merchandise, to wit, newspapers; and, therefore, the imposition of the tax is not discriminatory, arbitrary and capricious, since it is enforced in a like manner against all vendors or dealers in goods, wares and merchandise in the City of Chester.

9. Plaintiffs are not distributing agencies under the evidence, and are engaged solely in the business of selling goods, wares and merchandise.

10. Under all of the evidence plaintiffs are dealers or vendors in goods, wares and merchandise and are subject to the mercantile license tax ordinance of the City of Chester and the tax is constitutional.

11. Under all of the evidence the ordinance is properly and lawfully imposed upon plaintiffs, who are engaged in the sale of goods, wares and merchandise in the City of Chester, and the ordinance is constitutional as applied to plaintiffs.

12. The bill in equity in this case must be dismissed at the cost of plaintiffs.

### Decree Nisi

And now, July 13, 1950, it is ordered and decreed:

1. The bill of complaint herein filed be and the same is hereby dismissed;

2. Plaintiffs shall pay the costs.

### OPINION SUR EXCEPTIONS

TOAL, J., December 18, 1950.—This is a bill in equity by which plaintiffs seek to enjoin defendants from charging or collecting any tax from them under the provisions of Ordinance No. 73 of 1948 of the City of Chester, Pa., which provides for the imposition on and collection of a mercantile license tax from:

(1) Wholesale vendors, or dealers in goods, wares and merchandise, i.e., any person who sells to dealers in, or vendors of, goods, wares and merchandise and to no other persons.

(2) Retail vendors of or dealers in goods, wares and merchandise, i.e., any person who is a dealer in or a vendor of goods, wares and merchandise who is not a wholesale dealer or vendor.

Plaintiffs are in the business of obtaining newspapers from the publisher and then distributing them to various subscribers which they have obtained in their districts. Plaintiffs contend that they are of a class to which the ordinance does not apply because they are rendering a service, to wit, the distribution of newspapers to home subscribers. The city, on the other hand, contends that plaintiffs are dealers buying and reselling newspapers, and therefore come within the provisions of the ordinance.

In his adjudication the chancellor held:

1. That plaintiffs were vendors or dealers in goods, wares and merchandise and as such were subject to the tax imposed by the ordinance, and

2. That the Mercantile License Tax Ordinance of the City of Chester is constitutional.

Plaintiffs filed exceptions to the chancellor's findings of fact, conclusions of law and decree nisi. This matter was argued before the court en banc and will now be disposed of.

Plaintiffs except to the chancellor's findings of facts nos. 5, 6, 7, 8, 9, 9½, 10 and 11 by their first exception.

The exception to the chancellor's fifth findings of fact is hereby dismissed because the chancellor has not, by rewording the ordinance, attached any other meaning to the ordinance.

The exceptions to the chancellor's findings of fact nos. 6, 7, 8, 9, 9½, 10 and 11 are hereby dismissed because there is sufficient evidence to substantiate the findings.

The second exception includes the failure of the chancellor to find facts in accordance with certain of plaintiff's requests.

They except to the chancellor's failure to find as follows:

"4. That all of the said papers distribute their entire editions within the City of Chester:

"1. By distributors to individual subscribers at their respective homes;

"2. By their own trucks or by distributors to stores and newsstands at their place of business."

This finding of fact cannot be supported by the evidence as it refers to all the papers and the testimony in this respect did not cover all the papers. Therefore we cannot find such as a fact.

Plaintiffs except to the chancellor's failure to find as follows:

"8. The Chester Times has no other method of delivery or distribution of its newspapers in the City of Chester."

Such a finding of fact in itself would be meaningless as it is incomplete. Further, it is immaterial to the issue, whether or not the Chester Times has any other method of delivery or distribution of its newspapers in the City of Chester as the Chester Times is not a party to the action. Therefore we cannot find such as a fact.

Plaintiffs except to the chancellor's failure to find as follows:

"11. The method of distribution of newspapers by the independent distributors is in accordance with long established custom and usage of the trade."

There is nothing in the evidence to substantiate the fact that the method of distribution is in accordance with long established custom and usage of the trade. Custom and usage were never mentioned in the trial of the case. Therefore we cannot find such as a fact.

Plaintiffs except to chancellor's failure to find as follows:

"14. The customs and usages of the trade and the oral contracts between newspaper publishers and independent distributors require of the independent distributor the following:

"(a) Solicitation of subscriptions.

"(b) Pick up of newspapers from designated points and delivery of the same to subscribers.

"(c) Collection of sales price of newspapers from subscriber and accounting therefor to the newspaper at a fixed price per paper.

"(d) Retention of a fixed price per newspaper as compensation for distribution.

"(e) No resale of newspapers on the streets or open market.

"(f) No collection of more than the stated price of the newspaper from home subscriber.

"(g) Not to order and receive more newspapers than their respective subscription lists.

"(h) Not to deliver or sell newspapers out of their respective specific territories.

"(i) The distributor to handle the newspapers cleanly, promptly, efficiently, and satisfactorily to the subscribers.

"(j) Selection of independent distributors by newspaper publishers and limitation by newspaper publishers as to the territory allowed to respective independent distributors.

"(k) Direct control of independent distributors by newspaper publishers as to times and manner of delivery, delivery to all subscribers who apply, refusal of credit for papers not accepted by individual subscribers and prohibition of speculation in newspapers."

Custom and usage were not in evidence and therefore we cannot find such as a fact.

Plaintiffs except to the chancellor's failure to find as follows:

"15. Failure of independent distributors to comply with mandates of newspaper publishers would be sufficient cause for a termination of distribution relations on the part of the newspaper publishers."

Such a finding would not be supported by the evidence. The word mandate covers a multitude of things and the evidence and other findings of fact definitely reveal that the publishers do not dictate to the dealer the method by which he conducts his business. Therefore we cannot find such as a fact.

Plaintiffs except to the chancellor's failure to find as follows:

"16. The newspaper publishers maintain strict control over the services rendered by the distributors and no control over sale of newspapers by newsstands and retail stores."

Plaintiffs have injected the words "strict control" in their request and such a description is not only abstruse in these circumstances but is not supported by the evidence. Therefore we cannot find such as a fact. Furthermore we are not interested for the purpose of this case in the circumstances involved in the sale of newspapers by newsstands and retail stores.

Plaintiffs except to the chancellor's failure to find as follows:

"17. Newspaper publishers allow stores and newsstands to return unsold papers and receive full credit therefor."

The evidence does not support such a finding because it does not reveal how all newspaper publishers transact such business with the newsstands and stores. Furthermore, we are not interested in such transactions because they are not at issue. Therefore we cannot find such as a fact.

Plaintiffs except to the chancellor's failure to find as follows:

"19. None of the distributors maintain a store or newsstand or other place for the sale of newspapers to the general public."

We feel that such a finding is sufficiently covered by the chancellor's findings of fact 6, 7, 8, 9 and 11 and therefore it would only be surplusage to add this finding. Therefore we will not find such as a fact.

Plaintiffs except to the chancellor's failure to find as follows:

"20. None of the distributors sell any newspapers to the general public."

The evidence does not support such a finding of fact. Furthermore, such a finding of fact is misleading. The evidence shows that if one of the general public orders a newspaper from one of the plaintiffs, plaintiffs will purchase a newspaper for him at a wholesale price and then sell it to the ordering member of the general public. Therefore we cannot find such as a fact.

Plaintiffs except to the chancellor's failure to find as follows:

"21. All the newspaper publishers, from time to time, conduct subscription campaigns and circulation programs for the increase of circulation in the City of Chester at the newspaper publisher's own expense and without cost to the independent distributors."

We are of the opinion that this subject is covered fully and more fairly by the chancellor's finding of fact number 10 and furthermore is immaterial to the issue. However, we will amend finding of fact number 10 to comply with plaintiff's request 21 to a certain extent, as follows:

"10. Although subscription campaigns are conducted by the publishers at their own expense, the newsdealers benefit thereby as they secure the new subscribers as their customers."

Plaintiffs except to the chancellor's failure to find as follows:

"22. The newspaper publishers consider the independent distributors as an integral portion of their distribution system, essential for their circulation, and as the only source of distribution in the City of Chester to individual home subscribers."

We are of the opinion that such a finding is sufficiently found by the chancellor's finding of fact number 11, and any further finding such as requested by plaintiffs would be mere surplusage. Therefore it is unnecessary for us to find such as a fact.

Plaintiffs except to the chancellor's failure to find as follows:

"23. There is no evidence in this case as to the sale by any independent distributor of any newspaper to any one."

The evidence does not support such a finding of fact. In fact it substantiates the contrary. Therefore we cannot find such as a fact.

Plaintiffs except to the chancellor's failure to find as follows:

"24. There is no evidence in this case to establish any sale by any of the independent distributors, either wholesale or retail, of goods, wares and merchandise."

Such a finding of fact is contrary to the evidence in the case as it does establish sales made by plaintiffs. Therefore we cannot find such as a fact.

Plaintiffs except to the chancellor's failure to find as follows:

"25. The independent distributors are rendering services only and are not dealers or vendors in goods, wares and merchandise."

Again such a finding of fact would be contrary to the evidence in the case, and therefore we cannot find such as a fact.

Plaintiffs except to the chancellor's failure to find as follows:

"26. There is no evidence that the City of Chester taxes or has attempted to collect the mercantile tax upon any other distribution systems in the City of Chester."

We feel that such a finding of fact is irrelevant to the issue in this case. Other distribution systems were not at issue. Such systems may differ widely from the transactions in this case. Therefore we cannot find such as a fact.

Plaintiffs except to the chancellor's failure to find as follows:

"27. There is no element of bargain and sale between independent distributor and newspaper publisher or of bargain and resale by the independent distributor and home subscriber, under the long established usage and customs of the newspaper distribution system."

Such a finding of fact is contrary to the evidence in the case. Therefore we cannot find such as a fact.

Plaintiffs, by their third exception, except to the chancellor's describing plaintiffs as newsdealers in many of the findings of fact. Plaintiffs and their witness referred to themselves as dealers in their own testimony.

Plaintiffs, by their fourth exception, except to the chancellor's conclusions of law 3, 4, 5, 6, 7, 8, 9, 10, 11 and 12. These exceptions are dismissed because, in our opinion, the conclusions of law, as found by the chancellor, are based upon proper findings of fact and express the law applicable to this case.

Plaintiffs, by their fifth exception, except to the refusal of the chancellor to make certain conclusions of law as requested by plaintiffs. These exceptions are dismissed as they do not express the law applicable to the instant case.

Exception 6 to the decree nisi is dismissed.

We should like to add the following by way of comment. Plaintiffs maintain and still maintain that they are engaged in rendering a service and not selling goods, wares, and merchandise. The evidence does not support such a contention. As was pointed out in the adjudication, newspapers are goods, wares and merchandise. This being so it is necessary to determine whether plaintiffs sell such goods, wares and merchandise.

Plaintiffs acquire the newspapers each day from the publisher. They are charged for the number of newspapers they acquire and pay the publisher for those newspapers. There are no strings attached to such transfer. To the contrary the transfer is absolute. Plaintiffs cannot return to the publisher and get credit for, from the publisher, any newspapers not disposed of. Therefore, plaintiffs acquire title to the newspapers, which become the property of plaintiffs.

Plaintiffs have certain customers to whom they distribute the papers and these customers, when they receive the papers, are liable to plaintiffs for the price thereof. The publishers have no connection or contracts with these customers whatsoever. The customers do not pay the publisher for the newspapers, but pay plaintiffs. If the customers fail to pay plaintiffs, it is not the publisher's loss, but that of plaintiffs. Furthermore, the publisher does not know whom the customers of plaintiffs might be. They keep no records or lists of such customers and have no concern about whether such customers pay for the newspapers. Only plaintiffs are concerned with these customers.

The transactions between the publisher and plaintiffs and plaintiffs and the customers are entirely separate and have no relationship whatsoever. Plaintiff acquires title to the papers from the publisher by means of a sale, and the customers obtain title to the papers from plaintiffs by means of a sale.

We feel that the best contention plaintiffs could make in the circumstances would be that they in part render services and in part deal in goods, wares and merchandise, but even in a situation such as that the ordinance would apply.

We affirm the findings of fact and conclusions of law of the chancellor and adopt them as our own. Accordingly we enter the following

### Final Decree

And now, December 18, 1950, it is ordered and decreed that:

1. Finding of fact number 10 is amended to read as follows:

"10. Although subscription campaigns are conducted by the publishers at their own expense, the newsdealers benefit thereby as they secure the new subscribers as their customers."

2. The following exceptions of plaintiffs are hereby dismissed: 1 to 6, inclusive.

3. The bill herein filed be and the same is hereby dismissed.

4. Plaintiffs shall pay the costs.