JOHN B. KILEY, RESPONDENT, *v.* THE WESTERN UNION TELEGRAPH COMPANY, APPELLANT.

*Telegraph company — liability of, for a failure to deliver a dispatch — measure of damages — speculative damages not allowed.*

On Sunday, March 11, 1883, the plaintiff delivered to an operator of the defendant, a telegraph company at Olean, N. Y., a message of which the following is a copy: "To Hilton & Waugh, Bradford, Pa. Buy the twenty-five in to-morrow morning at best; J. B. K.," paying for its transmission fifteen cents. The message was sent to Buffalo but never delivered. From the evidence given upon the trial of the action it appeared that the message was to be interpreted as a direction to Hilton & Waugh, oil brokers, at Bradford, Pa., to purchase on plaintiff's account at the opening of the market on Monday morning 25,000 barrels of oil at the market price, and that they would have so understood it had it been received. The plaintiff was speculating on the market price of oil, dealing with Hilton & Waugh, sometimes buying and sometimes selling oil upon a margin; no oil was delivered by either party, the transaction amounting simply to a settlement of the differences between the prices at which the oil was bought and sold.

The plaintiff ordered the oil to be purchased to comply with the terms of a sale of that amount which he had made on March ninth. On March nineteenth the plaintiff purchased, at a price higher than the market price on the said Monday morning, the 25,000 barrels of oil to deliver under the sale of March ninth, and thereafter brought this action to recover the differenece between the price of oil on the said Monday morning and on March nineteenth.

*Held,* that assuming that the dealings between the parties might be treated as legitimate and recognized as valid, the plaintiff had failed to make a case for the assessment of damages and that his recovery should be limited to the price paid for the message.

That as the plaintiff and Hilton & Waugh dealt with each other as principals, the plaintiff's dispatch must be regarded as a mere offer, which Hilton & Waugh might accept or reject as they thought best without violating any agreement then existing between them and the plaintiff.

The question as to the validity of the contract, and as to whether it should be governed by the laws of this State, or by the laws of the State of Pennsylvania, considered by BARKER, J.

APPEAL from a judgment, in favor of the plaintiff, entered upon the verdict of a jury rendered at the Cattaraugus Circuit for $687.57 damages.

The defendant, a corporation created under the laws of this State, owned and operated a telegraph line between Olean, N. Y., and Bradford, Pa. Hilton & Waugh were brokers and dealers in oil, having offices in Bradford and other places. The plaintiff had transactions with them in buying and selling oil. On Sunday, the 11th of March, 1883, between five and six P. M., the plaintiff delivered to the defendant's operator, at its office in Olean, a message, of which the following is a copy: "To Hilton & Waugh, Bradfoad, Pa. Buy the twenty-five in to-morrow morning at best. J. B. K.," paying for its transmission fifteen cents. This message was at once wired from the Olean office by the way of Buffalo, but never reached its destination. On Monday, the twelfth of March, the oil market opened at ninety-five cents per barrel, and the prices on change fluctuated between that point and one dollar and one cent. The next day the market was substantially the same, at no time declining to ninety-five and one-quarter. Late in the afternoon of Monday the plaintiff was advised of the non-delivery of the message. On the nineteenth the plaintiff purchased 5,000 barrels of oil at one dollar and four cents, and 20,000 at one dollar and five cents. This action was brought to recover damages arising from the failure to deliver the message. On the face of the blank on which the message was written there were printed conditions exempting the company from liability for all mistakes in transmission, and for non-delivery, unless the message was repeated.

*Porter Norton,* for the appellant.

*J. H. Waring,* for the respondent.

BARKER, J.:

In disposing of this appeal it will be assumed, but not affirmed as true, that the plaintiff was ignorant of the terms and conditions printed on the blank slip on which the message was written. As

we leave this question untouched, we may also pass another point presented by the respondent, that the printed conditions, which the appellant insists form a part of the contract between it and the plaintiff, do not apply where there was, as in this case, a failure to deliver the message. So far as it appears from the record, the jury were not instructed as to the law applicable to either of these questions. The only question which we deem it necessary to consider is the one in relation to the measure of damages.

The defendant having failed to perform its agreement based upon a good consideration, the plaintiff was entitled to a verdict in his favor, at least for the charges collected by the operator. The defendant asked the court to direct the jury to limit their verdict, if they found for the plaintiff, to that amount. The request was rejected and the defendant excepted. The message on its face indicated that it related to the purchase of property and nothing more, as the quantity and kind thereof were not mentioned. It was necessary for the plaintiff, in order to sustain a recovery for more than nominal damages, to give proof of the character of the business to which the message related, and that the non-delivery resulted in a pecuniary loss. The nature and character of the business to which it related was explained upon the trial in the evidence given by the plaintiff. By the aid of such statement the message may be interpreted as a direction to Hilton & Waugh to purchase on his account, at the opening of the market on Monday morning, 25,000 barrels of oil at the market price, and it might be assumed that they would have so understood the dispatch if the same had been received by them. At this time Hilton & Waugh were dealers in oil, having an office in Bradford, Pa., and the plaintiff was a resident of this State, residing at Olean, from which place the message was sent. The nature of the business transacted between these parties, and the exact condition of the same at that time, is very clearly stated by the plaintiff in his own evidence, and in substance it was this: That he was speculating on the market price of oil, and that his dealings were carried on with Hilton & Waugh, sometimes being both a buyer and seller of that product. It was conceded as a fact that there was never any delivery made by either party of the oil bought and sold. The plaintiff testified: "The oil bought was bought on a margin; I put up twenty per cent on this purchase; this 25,000 barrels I bought on the nine-

teenth, had been previously sold by me; it was sold on the ninth of the month and purchased on the nineteenth; I bought it on the nineteenth, and it had been sold on the ninth of March; I sold on the ninth to be delivered on the nineteenth of March; I bought it on the nineteenth for the purpose of that deal, and I had put up a margin of twenty per cent; I bought to be delivered upon call, and put up a margin with a view of getting the use of the market, and there was no oil delivered between me and Hilton & Waugh; there was none delivered to me, and I delivered none to them; the transaction simply amounted to the differences between the prices at which I sold to them and the prices at which I bought it in, and the amount of the differences depended upon the fluctuations of the market during the time in question; I dealt with Hilton & Waugh in margins; large quantities of oil were bought and sold on the market at that time in this way."

The price at which he sold the 25,000 barrels of oil on the ninth does not appear, nor is it important in disposing of the question of damages. It is not pretended that the transaction of the ninth was in writing, or that the oil was expected to be delivered, and the difference, if any, in the market value between those days was to be adjusted by either a debit or credit in the plaintiff's account with Hilton & Waugh, as the market should advance or decline. If the dealings between these parties may be treated as legitimate and recognized in the law as valid, and should not be condemned as unlawful as being mere betting on the price of oil, then I am of the opinion that the plaintiff failed to make a case for the assessment of damages, and that the recovery should have been limited to the price paid for the message. All sums recovered beyond that amount would be contingent, uncertain and speculative in their character. It should be kept in mind, as an important fact bearing on the question of damages, that the plaintiff and Hilton & Waugh dealt with each other as principals, and that the latter were not in any sense the agents of the plaintiff. The evidence fails to disclose any circumstance from which it can be fairly said that that relation existed between these parties. While Hilton & Waugh may have been brokers and acted for others in that capacity in buying and selling oil, yet the plaintiff in all the transactions disclosed by his evidence traded with them as principals on the other side of

the contract. The transaction sought to be started by this message was an original one, wholly disconnected with the prior dealings as far as Hilton & Waugh were concerned, and they were at liberty to reject the offer made by the plaintiff, and by so doing would not have violated any agreement existing between them and the plaintiff at that time. In view of this circumstance the plaintiff's message was but an offer to buy of Hilton & Waugh 25,000 barrels of oil on Monday at the market price. So far as the defendant is concerned the dispatch must be regarded as if the offer to purchase the same quantity of oil, had been addressed to another party with whom the plaintiff had never had previous dealings. I cannot see how any other view can be taken of this feature of the case. The message did not relate to the sale or transfer of any property owned by the plaintiff, and its non-delivery did not operate to diminish the value of, or to change the situation of any item of his estate. The claim that a case was made for the assessment of damages is based upon the idea that it was an offer to purchase, for the plaintiff insists that by the failure to deliver the message, he lost an opportunity to purchase oil at the price established by the market on Monday morning, and before he was advised that the message had not been delivered oil advanced, and he seeks to recover of the defendant the advance in the price as his damages.

If Hilton & Waugh had been his agents in fact, or he had sought to make them such for the purpose of making the purchase of some third party, then a different question would be presented. In such a case, the plaintiff having an agent on the market, with ample funds to make the purchase, and under instructions to do so, it would be reasonable to conclude that a purchase would have been made on Monday, at the figure indicated by the early quotations of that day, and thus secure the advance which took place before he was advised that the defendant had not performed its agreement. · But how can it be said with any degree of certainty that Hilton & Waugh would have accepted the plaintiff's offer to purchase of them the quantity of oil mentioned. They were under no legal obligations to accept his proposition. The claim of the plaintiff that they would have done so is wholly speculative.

If a merchant is on his way to a commission house with an intention of making a purchase of some of the merchandise there held

for sale, at the price then placed upon it, and his arrival is delayed for a few hours because the carrier with whom he has taken passage has not kept his agreement and the hour of his arrival is delayed, and in the meantime the goods which he intended to purchase have advanced in price, is it the law that in a suit against the carrier for a breach of his contract, the latter is liable in special damages for the loss of profits which the merchant claims he has sustained because he failed to make a purchase of the goods at their price at the time when he should have arrived according to the promise of the carrier. Who can say that he would have made the contemplated purchase? It is true that he might have done so, but there is no certainty that he would have made and concluded a contract.

This case is to be distinguished from a class of cases where the message was erroneously transmitted, and its sense and meaning changed by an alteration, and the party to whom it is addressed acts on its terms as delivered and thereby causes damages to the sender of the communication. In such cases the telegraph company is liable for all the direct damages arising from the mistake, and it was so held in *Leonard* v. *The New York, etc., Telegraph Company* (41 N. Y., 544).

Nor is it like the case of *Squire* v. *Western Union Telegraph Company* (98 Mass., 232) where there was a failure to deliver the message and the sender was allowed to recover special damages, which it was held in view of the facts of the case, were the certain and direct result of the non-delivery of the message. In that case the owner of merchandise, who resided in Buffalo, had a correspondence with a house in Boston for the sale of the same, and they had failed to agree as to the price. Finally the owner addressed an offer of sale in writing to the Boston parties and requested a reply by telegram. Upon receiving the letter containing the offer, the Boston parties prepared the message accepting the same. If this had been delivered in due time, it would have concluded a valid contract of sale, and the advance which thereafter took place in the price of the goods, was a direct loss to the party sending the message. In principle the case at bar is similar to *Baldwin* v. *The United States Telegraph Company* (45 N. Y., 744), where it was held that the damages sought to be recovered by reason of the non-

delivery of a message were speculative and uncertain and for that reason were rejected.

It is a cardinal rule on the subject of damages that one party shall recover all the damages he has sustained, occasioned by the breach of the contract by the other party, this rule is modified in its application by two others. The damages which may be recovered must be the natural and direct result arising from the breach of the agreement, and must also be certain both in their nature and in respect to the cause from which they flow. Under the rule thus qualified, speculative, contingent and remote damages, which cannot be traced directly to the breach complained of, are excluded.

Applying these propositions in the cases as they arise, such damages are only allowed as may be fairly supposed to have entered into the contemplation of the parties when they made the contract and might naturally be expected to follow its violation. Under the rule thus formulated, we are of the opinion that the damages sought to be recovered in this case, were in their character uncertain and speculative.

The appellant makes the further point, that all the transactions on the part of the plaintiff with the Pennsylvania parties were void, and in violation of the provisions of the statute of this State enacted " to suppress betting and gaming." That they were mere wager contracts, and that the whole affair was a mere bet or game of chance, on an unknown and uncertain event. If our own laws are applicable to the case, as no actual sale or purchase of oil was made or contemplated, such contracts are illegal and cannot be enforced. (*Bigelow* v. *Benedict,* 70 N. Y., 202; *Yerkes* v. *Salomon,* 11 Hun, 471.)

The agreement of the defendant to transmit the dispatch related to such void and illegal contracts or transactions, and the dispatch was the initiatory step on the part of the plaintiff toward carrying the same into effect. Although the defendant was not a party to the unlawful scheme, yet its own agreement to send forward the plaintiff's message was a means adopted by the mover to further that illegal enterprise, and so connected with it that it is void like the scheme itself, and the law will not take notice of its non-performance at the instance of the other party to the contract. If the message had been delivered, no valid or binding

contract would have resulted from an acceptance of the offer by the parties to whom it was addressed. The plaintiff is compelled to make the unlawful enterprise a part of his case. It was essential for him to prove, as a foundation for the allowance of special damages, to what the dispatch related. If he had not made proof on the subject of the object and purpose of the message, then, as a matter of law, the damages would have been nominal. (*Dung* v. *Parker*, 52 N. Y., 494.)

These views upon this point have been expressed upon the assumption that the dealings between the parties were carried on in this State, and under such circumstances that their validity must be determined by our own laws relative to gaming contracts. But upon the case as disclosed by the record we are of the opinion that they were Pennsylvania contracts, and their validity must be determined by the laws of that State. The statutes of that State were not given in evidence, and the validity of the plaintiff's contracts with Hilton & Waugh are not presented for our consideration, unless such contracts are declared illegal and void as against public policy by the rules of the common law. In *Kirkpatrick* v. *Bonsall* (72 Penn. St. R., 158), it was held that buying and selling on the market, where margins only were put up, with no intent to deliver on the part of the seller, or on the part of the buyer to receive, is nothing but a mere venture, and may be characterized as gambling, and for that reason the contract was not enforceable and is utterly void. It does not appear from the case as reported whether the decision was based upon the statutes of that State or upon the principles of the common law.

The contract upon which the suit is founded was made and concluded in this State, and was for work and labor to be done and performed on Sunday, and was in direct violation of our statutes regulating the observance of that day, which prohibits all servile labor or work of any kind, " excepting works of necessity and charity." A contract for the publication of an advertisement in a newspaper to be issued and sold on Sunday has been held to be void under the statute. (*Smith* v. *Wilcox*, 24 N. Y., 353.)

The service which the defendant through its agent undertook to perform was servile labor, in the same sense as the labor of a mechanic would be if done on Sunday in constructing a house.

The operator in receiving and sending the message exposed himself to the pains and penalties of the act for engaging in a service on the Lord's day prohibited by the statute. For this reason an action cannot be maintained for a breach of the agreement to transmit the message. There is no dispute about the facts bearing on this question, for it is conceded that the plaintiff expected, when he delivered the message, that it would be forwarded at once, and not held until a secular day, then to be transmitted. As a matter of fact it was sent from the Olean office immediately upon its reception. Other interesting and serious questions, to which we make no reference, were presented and discussed on the hearing, but we deem it unnecessary to give them any consideration on this appeal.

The judgment should be reversed, new trial granted, costs to abide the event.

SMITH, P. J., HAIGHT and BRADLEY, JJ., concurred in the result upon the ground that the rule of damages adopted was speculative and uncertain, and express no opinion on the other questions discussed in the opinion.

Judgment and order reversed and new trial granted, with costs to abide the event.