### ALVAN STEWART *vs.* HAWLEY & BARTHOLOMEW.

Where a magistrate, on complaint of a violation of the statute for the *obser-
vance of Sunday*, issued a warrant, had the person complained of arrested,
and imposed a fine upon him, " *it was held* that he was *not liable in an ac-
tion of trespass*, although he might have *misjudged* as to the facts alleged
being an offence within the meaning of the statute.   The *complaint* here
was that the party, "on the first day of the week called *Sunday*, circula-
ted a memorial to the legislature" without stating the purport or object of
the paper circulated.

*So it was also held*, that the *constable* executing the warrant was not liable in
trespass.

THIS was an action of *trespass, assault, battery and false
imprisonment*, tried at the Oneida circuit in April, 1839, be-
fore the Hon. PHILO GRIDLEY, one of the circuit judges.

At a public meeting on the *Sabbath*, the plaintiff present-
ed *an anti-slavery memorial* for signatures, to be forwarded
to the legislature of this state, praying their interference on
the subject of slavery.   *Bartholomew*, one of the defendants
in this cause, thereupon made a complaint in writing, veri-
fied by his oath, to *Hawley*, the other defendant, who was a
justice of the peace, that the plaintiff, "on the 15th day of
July instant, being the first day of the week called Sun-
day, *personally engaged* at Augusta aforesaid *in circula-
ting a memorial to the legislature*, at its next session, of
the state of New York, contrary to the statute in such
case made and provided."   The justice issued a *warrant*
reciting the complaint as made to him, directed to any con-
stable of the county of Oneida, commanding the plaintiff to

Stewart v. Hawley.

be apprehended and brought before him. The warrant was delivered to *Bartholomew*, who was a constable, and proceeded to a congregational church at *Oriskany Falls*, where a meeting of the Oneida County Anti-slavery Society was holden, and interrupted the plaintiff whilst addressing the meeting, and told him he had a warrant for him *for breaking the Sabbath*. The plaintiff yielded to the arrest, and was taken by the constable before the justice, where the matter was investigated, and the plaintiff *fined one dollar*. The plaintiff offered to prove that Bartholomew abused him at the door of the church when he made the arrest, by language and in the manner of making the arrest; that he threatened to bind him if he spoke a saucy word on the way to the residence of the justice; that he was actually carried there by force; "and that the constable had boasted that he had had a hell of a scrape with the plaintiff, that he intended to have one from the beginning, and had had a good one." The counsel for the defendant objected to such evidence being given, on the ground that the action was *joint*, and there was no offer to implicate the justice in the facts offered to be proved. The judge sustained the objection, and after some further evidence not materially changing the character of the case, directed the plaintiff to be *nonsuited*. The plaintiff asked for a new trial.

*A. Stewart*, in person, insisted that the justice had no jurisdiction except what was derived from the *complaint*, and it contained nothing which showed a violation of the *act for the observance of Sunday*. It had been pretended that his conduct came within the words of the statute forbidding *servile laboring or working on that day*. 1 R. S. 675, § 70. These, he said, were the only words of the statute under which such a pretence could be made, but who could believe that *circulating a memorial to the legislature* is embraced within those terms. The statute, he contended, has no operation upon any acts except those which it prohibits, and consequently no one is liable to be proceeded against by virtue of it, unless guilty of a palpable violation of its provisions. In support of which proposition, he cited many

adjudged cases. There was no room, he contended, for the exercise of judgment by the justice, so as to bring him within the protection of the rule of law that a magistrate is not responsible for forming an erroneous judgment. There was no complaint that the statute had been violated; the only complaint was that on *Sunday,* the 15th day of July, he was personally engaged in circulating a memorial to the legislature! for what purpose was not stated; and for aught that the justice knew, it might have been to further the very objects for the promotion of which the act was passed and its penalties created. As to the *constable,* he was utterly without excuse, especially under the proof offered, which as to him and for the purpose of this motion must be considered as having been given. It however should have been received, he insisted, as to *both defendants;* the circumstances of the case being such as would have warranted the jury to have found that the *justice* acted *colore officii;* but at all events, it was proper evidence against the *constable,* against whom alone the jury might have found a verdict, although the action was *joint.*

*T. Jenkins,* for the defendants.

*By the Court,* NELSON, Ch. J. Our statute, 1 R. S. 675, § 70, after specifically forbidding several acts and exercises on *Sunday,* adds, "*nor shall there be any servile laboring or working on that day,*" &c., and annexes a fine of one dollar for each offence. The 73d section, p. 676, provides that whenever complaint shall be made to any justice, &c., of a violation of the statute, he shall cause the offender to be brought before him, and shall proceed summarily to inquire into the facts, &c., and the conviction shall be final and not the subject of re-examination upon the merits. By the 2 R. S. 706, § 2, whenever any complaint shall be made to a magistrate of a criminal offence, it shall be his duty to examine on oath the complainant, &c. And by § 3, *if it shall appear from such examination that any criminal offence has been committed,* the magistrate shall issue a proper warrant under his hand, with or without seal, *reciting the accusation,*

&c.   It cannot be doubted but that the justice, by means of the *complaint* in this case and the *warrant* issued thereupon, acquired jurisdiction over the *subject matter* and the *person* of the defendant, and that his error, if any, was an error of judgment.   He may have misapprehended the true import of the statute, and concluded that the plaintiff fell within the prohibition, when he did not; but no principle of law is better settled than that for such mistake the magistrate is not responsible in an action.   1 Brod. & Bing. 432.   *Mills* v. *Callet*, 6 Bing. 85.   3 Maule & Selw. 411.   8 Wendell, 462.   11 id. 95.   19 id. 61, 62.   The case of *Mills* v. *Callet* is very strong and decisive.   The only question, said TINDALL, Ch. J. is whether the magistrate had jurisdiction to investigate and commit.   He further remarked, that if a party charged with an offence be brought before a magistrate the officer must exercise a judgment on the case, and is not liable for mere error of judgment.   Burrough, J. also observed, that if a magistrate has jurisdiction, he can never be liable for an action of trespass, nor in any form of action for a mere mistake in matter of law; and whether an *occupier* could commit a felony under the statute 7 and 8 G. 4, *on his own premises*, was clearly matter of law.   Now here, on the complaint being made the magistrate was bound to entertain it and exercise his judgment; and whether the facts disclosed showed *prima facie* a violation of the *act for the observance of the sabbath*, was certainly a question of law.   The section of the statute is not very explicit in respect to the clause already referred to, and might well embarrass more skilful administrators of the law, than many of our justices of the peace.   I cannot agree with the plaintiff, that the facts are so barren as not to lay the foundation for jurisdiction, or that the decision was so gross as to afford evidence *per se* of the influence of bad motives.   On the contrary I am free to say, with TINDALL, Ch. J. in *Mills* v. *Callet*, that it would be most dangerous if magistrates were held to be liable in such cases.

Great stress was laid on the insufficiency of the recitals in the *complaint* and *warrant*.   As to the former it was not necessary that it should be put in writing; an oral examina-

tion would have been sufficient, 2 R. S. 706, § 2; and as to the latter, the recital of the *offence* might be very brief. The object of the recital is to enable the defendant to see whether the offence be bailable, so that he may appear prepared with bail or with any defence that is admissible on the return of the warrant. 1 Chit. Cr. Law, 33, 34. Hawk. B. 2, ch. 13, § 25. The better opinion at common law appears to be, that a recital of the *offence* in the warrant is not essential. 9 Wendell, 62. 19 id. 56, and cases above cited. Even in the case of a *mittimus*, where a brief recital is required, the omission does not render it void, so as to subject the jailer or other officer to an action of false imprisonment, or excuse him for an escape. 1 Chit. Cr. Law, 93. I do not, however, put the decision upon the sufficiency of the recitals in the *complaint* or *warrant*, any farther than this: that they present a case within the jurisdiction of the justice, and which called for the exercise of his judicial functions; and if so, though he may have erred, he is not liable.

If we are right in the conclusion respecting the justice, it necessarily follows that the warrant was a protection to the officer; for if there was matter enough to justify the proceeding of the justice, it would of course justify the officer. Indeed, if there had been no recital of the offence in the warrant, the constable would have been protected; for to subject him to responsibility in this action, it must be shown not merely that the magistrate had no jurisdiction to issue the process, but that it so appeared on the face of the process.

The judge was also right in excluding the evidence of the abuse of the plaintiff in the arrest, and whilst the officer was carrying the plaintiff before the magistrate. This was taking ground to sustain the action against the officer in respect to which the justice was in no way implicated. Assuming what we are disposed to hold in the case, that the process afforded a justification to both justice and officer for the arrest, the only object or legal effect of this evidence was to charge the latter for abuse in the execution of the process. I admit, if the plaintiff had elected to discharge the justice, he might have entitled himself to the evidence, and possibly have sustained the action; but as the case

stands, it was claimed as proper against both defendants, and so understood by the judge. This is obvious from the ground taken by the counsel against its admissibility, and upon which it was excluded.

Though I regret that the officer cannot be reached in this action for his abusive conduct towards the plaintiff, I am satisfied the case was disposed of at the circuit upon settled principles of law.

New trial denied.