ROBERT BOCOCK, RESPONDENT, v. WILLIAM COCHRAN, APPELLANT.

*Police justice of Coxsackie — the act creating the office is valid — 1867, chap. 260 — complaint for an assault — when the facts stated will protect the justice in issuing a warrant.*

The defendant, a police justice of the village of Coxsackie, issued a warrant for the arrest of the plaintiff for an assault and battery, upon a sworn complaint which alleged that the plaintiff did assault and beat the complainant, in the latter's place of business, by striking him without lawful authority

*Held*, that even though the facts stated were insufficient to establish the commis- sion of an offense over which the justice had jurisdiction, yet they were suffi- cient to render the action of the justice in passing upon their sufficiency a judicial one, and to protect him from an action for false imprisonment.

Chapter 260 of 1867, incorporating the village of Coxsackie, provides for the election of a police justice, and confers upon him, among other powers, "jurisdiction of all criminal cases, the same as is now possessed by justices of the peace of towns."

*Held,* that the act should be construed as conferring upon the justice jurisdiction of such criminal acts only as should be committed within the territorial limits of the village.

That as so construed the act did not create a local court within the prohibition of the Constitution and was valid.

APPEAL from a judgment in favor of the plaintiff, entered upon the verdict of a jury, and from an order denying a motion for a new trial made upon the minutes of the justice before whom the action was tried. The judgment was for $1,064.55.

The action was brought to recover damages for a false imprisonment. On the 30th day of April, 1881, the defendant, acting as the police justice of the village of Coxsackie, issued a warrant for the arrest of the plaintiff, on the charge of assault and battery, the sworn complaint alleging that the plaintiff did assault and beat the complainant in the latter's place of business, by striking him without lawful authority. The complaint upon which the warrant was issued, failed to show the place where the offense was committed. The defendant issued the warrant in which was written the village of Coxsackie as the place where the offense was committed. The defendant sent for Mr. Brandon, a young lawyer of the village and a town justice of the peace, and had him come and sit by him, in order that he might consult with him.

*Griswold & Crowell,* for the appellant.

*G. R. Adams,* for the respondent.

LEARNED, P. J. :

We are of opinion that these damages were excessive. We are well aware of the caution with which courts ought to interfere with this question, and need not refer to authorities. The plaintiff was arrested about ten A. M. Saturday, and walked with the constable to the defendant's office. During the adjournment for dinner the plaintiff was practically at liberty on informal bail given by Mr. Curtis. An adjournment to Monday was necessary. The constable took the plaintiff to the village lock-up, where he remained, as he

says, an hour, as the constable says, fifteen minutes, then the constable released him.

If the lock-up was an unsuitable place, that was not defendant's fault; nor does it seem that the defendant gave any direction to the constable.

Considering that this is an action against a magistrate, acting in the apparent discharge of his duty, we think that the jury must have been influenced by prejudice in their verdict. It can hardly be of any use to go over the testimony in detail on this point, to support our views.

With this view we might, for the present, dispose of this case. But a new trial will present questions of law, which may as well be considered at this time.

In the first place it is claimed that the magistrate acquired no jurisdiction because the sworn complaint did not state the offense to have been committed in Coxsackie. Under the decision in *Harrison* v. *Clark* (11 Sup. Ct. N. Y. [4 Hun], 685); *Stewart* v. *Hawley* (21 Wend., 552); *Harman* v. *Brotherson* (1 Den., 537), we are of the opinion that the action of the magistrate in issuing a warrant upon the sworn complaint presented to him was judicial, and that he is not liable to a civil action of false imprisonment for error therein. The protection of every officer who acts judicially against liability to an action for error is most important; and has recently been asserted in the noticeable case of *Lange* v. *Benedict* (73 N. Y., 12). We may refer also to *Clark* v. *Holdridge* (58 Barb., 61), and *Kenner* v. *Morrison* (19 Sup. Ct. N. Y. [12 Hun], 204). See, also, *Blythe* v. *Tompkins* (2 Abb., 469), where this view is taken, although the magistrate was held liable for a defect in the warrant. The case of *Blodgett* v. *Race* (25 Sup. Ct. N. Y. [18 Hun], 132) cited by plaintiff really sustains this same view. The magistrate was held liable in that case because no facts were stated in the complaint, not because the facts stated were insufficient.

In the present case facts were positively sworn to. Admit that they were insufficient, still the magistrate, acting judicially, held that they were sufficient, and he is not liable to a civil action for his mistake.

There remains one question, and that of great importance. It was held that the provisions of the act incorporating the village of

Coxsackie were unconstitutional, in creating the office of police justice and conferring on him certain authority. (Laws of 1867, chap. 260, §§ 2, 15.)

Even before the amendment to the Constitution of 1869 the legislature might organize inferior local courts in villages. (*Sill* v. *Village of Corning*, 15 N. Y., 297 ; *Brandon* v. *Avery*, 22 id., 469.)

The question is whether this act creates a *local* court. Section 15 provides that "the police justice shall have jurisdiction of all criminal cases the same as is now possessed by justices of the peace of towns." Does this mean that he has such jurisdiction within the village only, or also beyond its limits ?

In *Geraty* v. *Reid* (78 N. Y., 64), the Justices' Court of Brooklyn, by an act of 1849, had the same jurisdiction in said city that justices of towns had. It was held that a subsequent act of 1850, giving in addition the like jurisdiction as is exercised by justices of the peace of towns, did not extend their power outside of the city. For it was said that *the other construction would make the act invalid,* and that between two constructions that *is to prevail which will uphold a statute rather than that which will condemn it.*

In the case of *Waters* v. *Langdon* (40 Barb., 408), the act gave the police justice of a village the same power and jurisdiction as justices of the peace *in* the town of Whitestown, and said that his judgments and proceedings might be reviewed in the same manner as is, or may be, provided in case of judgments and proceedings of justices of the peace. Thus the act gave him the power of a justice of the peace *in* Whitestown. In fact it made him a justice of the peace. That was held to be unconstitutional. Now if we turn to *Brandon* v. *Avery* (*ut supra*) we shall find that the words "in said village " were held to make the court of the police justice local and therefore constitutional.

In the case of *Village of Deposit* v. *Vail* (12 Sup. Ct. N. Y. [5 Hun], 310) it was held that a statute authorizing the election of a police justice and saying that he should have the same jurisdiction, and as possessed by justices of the peace in the State, was intended to limit his jurisdiction to the village of Deposit and was constitutional.

We must then come back to this statute in question and consider from its whole language what was intended, bearing in mind the

rules of construction above stated. We find by section 2 that the police justi эɔ is an officer of the corporation. By section 15, in addition to the clause above cited, he is to have jurisdiction of civil and criminal matters arising under the charter of the village or any ordinances thereof. But he is not to serve as auditor or to have any appointing power, thus showing that he has not the full powers of a justice of the peace. So the eighteenth, nineteenth and twenty-third sections give special powers to the police justice, which are plainly local. The forty-first also specifies that moneys arising from fines and penalties shall be paid to the treasurer for the use of the village.

Looking then at this whole act, and taking, according to the above cited principle, that construction which will uphold rather than that which will condemn, is it not reasonable to say that the words in the act, " jurisdiction of all criminal cases, the same as is now possessed by justices of the peace in towns," mean *within the village ?* Could the legislature have meant, as the plaintiff must argue, that the police justice is by the terms of the act given jurisdiction to try all criminal acts committed in any town of the county which might be tried before a justice of the peace? On the contrary, it seems to us that the better construction is to hold that the words " the same " are descriptive of the kind and class of jurisdiction and not of the local extent.

We have here in fact words very similar to those in the act of 1850, discussed in *Geraty* v. *Reid (ut supra),* " the like jurisdiction " as is exercised by justices of the peace of towns ; yet it was held that these words must be construed so as to limit their operation to the city of Brooklyn. Why should we not construe the words in the present act to be limited to the village of Coxsackie, so as to uphold rather than condemn the statute?

Still another objection is made that the defendant associated with himself Mr. Brandow. We do not think that a justice of the peace may not consult another justice or a lawyer, or that he may not have such other justice or lawyer take minutes. That is no worse than if a stenographer took them. It does not appear that Brandow assumed any authority to try the case. He might lawfully act as *amicus curiæ.*

We may suggest, also, another view of this case, and that is, that

a large amount of the alleged false imprisonment was done under the authority of the defendant acting not as a court, but merely as an examining magistrate. The constitutional question has always been, so far as we know, as to the power to create other *courts* than those expressly provided for in the Constitution. (See *Sill* v. *Corning, ut supra,* and other cases.) Whether it can apply to the legislative power to create examining and committing magistrates would be an important question; if the defendant's acts had been from first to last the acts of a magistrate only, and not of a court.

The judgment must be reversed for excessive damages and also for error in law, new trial granted, costs to abide the event.

Present — LEARNED, P. J., BOOKES and BOARDMAN, JJ.

Judgment and order reversed on the law and for excessive damages.