DETERMINED IN THE

# THIRD DEPARTMENT

AT

# GENERAL TERM,

## November, 1888.

---

ALFRED AYERS, Appellant, v. SELWYN A. RUSSELL, DAVID V. O'LEARY and ANTHONY GOULD, Respondents.

*Insane person — commitment of — liability of the judge and physicians for a mistake or negligence in so doing — chap. 446 of 1874.*

The provisions of chapter 446 of the Laws of 1874, that, "upon the certificate of two physicians, under oath, setting forth the insanity of such person," an insane person may be committed to an asylum, and that the "judge may institute inquiry and take proofs as to any alleged lunacy before approving or disapproving of such certificate, and * * * may, in his discretion, call a jury in each case to determine the question of lunacy," confer upon the judge a discretion as to whether he will or will not institute the inquiry authorized by the statute. The word "may" in the statute is not to be construed as "must."

Where a judge, in the proceeding before him as to the commitment of an alleged insane person, errs in his judgment as to whether the facts presented to him do or do not confer jurisdiction upon him to act, he is not liable to an action for false imprisonment by a person committed by him as insane, through an error of judgment.

Where, in an action brought to recover damages for the false imprisonment of an alleged sane person, the complaint charged that the physicians, by whom a certificate as to his insanity was signed, made such certificate "without proper and ordinary care and prudence, and without due examination, inquiry and proof into the fact whether plaintiff was sane or insane," and a trial is had upon a demurrer interposed to the complaint by the physicians, they will be held liable to the plaintiff for the damages resulting from the false imprisonment, admitted by the demurrer to have been caused by such want of ordinary care and prudence on their part.

Physicians acting in the commitment of insane persons, and signing certificates to the effect that such persons are insane, are not, in theory of law, judicial officers, but medical experts; and they are not clothed with judicial immunity, but are chargeable for that neglect which, in the case of a professional expert, renders him liable for the failure to use the care and skill which his profession, *per se,* implies that he will bring to his professional work. (INGALLS, J., dissenting.)

Where neither the relatives nor the committee of a lunatic institutes proceedings. for his confinement, there must be a decision of a judge that the lunatic is dangerous and a warrant must be issued thereunder. (Per LEARNED, P. J.)

APPEAL by the plaintiff from a judgment rendered at the Albany Circuit sustaining the several demurrers, interposed by the several defendants, to the complaint in an action brought against said defendants for false imprisonment, on the ground that the com-. plaint did not state a cause of action.

The complaint alleged that on the 15th day of April, 1887, at. the city of Albany, in the county of Albany, the plaintiff was. forcibly and illegally arrested and conveyed, against his will,. and committed to the custody of the superintendent of the. insane asylum in said city of Albany as insane and a proper person for care and treatment, under the provisions of chapter 446 of the Laws of 1874, and was there forcibly and illegally confined, as such alleged insane person, for the period of thirteen days, to wit, from the 15th day of April, 1887, until the 27th day of April, 1887, inclusive; that he was not insane at the time of his said arrest and imprisonment, nor was he insane before that time, nor has he been insane at any time since; that his said arrest. and imprisonment was caused and secured by the defendants by means of certain certificates and approval thereof, prepared and issued by them against the plaintiff for his arrest, as follows, that is to say, the certificates of said Selwyn A. Russell and Daniel V. O'Leary, subscribed to and made by them under oath before JOHN GUTMANN, police justice and justice of the peace of the city and county of Albany, on the 14th day of April, 1887, certifying and declaring, in effect, that they were residents of the city of Albany, in the county of Albany, and were graduates of the Albany Medical College and had practiced as physicians — the said Selwyn A. Russell for ten years and the said Daniel V. O'Leary for fifteen years — and that their qualifications as medical examiners in lunacy had been duly attested and certified by Hon. JOHN C. NOTT, county

judge of the county of Albany; that on the 13th day of April, 1887, they personally examined the plaintiff, said Alfred Ayers, of the city of Albany, in said county; that he was a man about sixty-three years of age, was married, and was by occupation a carpenter, and that he was insane and a proper person for care and treatment under the provisions of chapter 446 of the Laws of 1874; that the grounds whereon they formed this opinion, separately stated — although they acted in concert together — were substantially the same, viz., that plaintiff was under delusive beliefs with respect to his wife, and under delusive ideas with respect to his wife and daughter, and that there were no reasons for believing that such delusions, or any of those ideas, were founded on fact; that the said defendant, Anthony Gould, as recorder of the city of Albany, did, on the 15th day of April, 1887, fully and formally accept, adopt, indorse and approve the said verified certificates of said Selwyn A. Russell and Daniel V. O'Leary, and their said opinions and the said grounds thereof, as sufficient, in matter of fact and in form of execution, for the arrest and confinement of the plaintiff as insane and a proper person for care and treatment under the provisions of chapter 446 of the Laws of 1874; that in neither of said verified certificates, nor in said approval thereof, was it declared that if plaintiff was possessed of said alleged delusions, or said delusive ideas, they rendered him dangerous to himself or to others, nor that it was dangerous to permit him to go at large; that the said defendants did, on said 15th day of April, 1887, at said city of Albany, issue and put forth said verified certificates and said approval thereof, so made, certified to and approved as aforesaid, as full and sufficient order for the arrest and imprisonment of the plaintiff thereon, as an insane person, in said insane asylum; they, the said defendants, believing and understanding that it was usual and customary to arrest and confine persons supposed to be insane on such certificates and approval thereof; that the plaintiff was arrested then and there, through the instrumentality of said defendants on said verified certificates and approval thereof, and committed, and confined, by virtue of the same, in said insane asylum, into the custody of said superintendent of said asylum, for the whole period of thirteen days, aforesaid alleged; that still protesting that he, the plaintiff, was not, and had not been, insane, and

feeling deeply grieved by his said arrest and imprisonment as a lunatic in said insane asylum, on said verified certificates and approval thereof, so made and issued against him by said defendants. as aforesaid, he did afterwards, on the 18th day of April, 1887, take and enter an appeal therefrom, under said chapter 446 of the Laws of 1874, to the Hon. WILLIAM L. LEARNED, a justice of the Supreme Court, who thereupon called a jury to decide upon the facts of plaintiff's alleged lunacy, which jury, after full and fair investigation of the same, did, on the said 27th day of April, 1887, find said plaintiff to be sane, whereupon said justice did forthwith discharge said plaintiff from his said confinement in said insane asylum ; that said verified certificates and said approval thereof, in manner and form aforesaid, were, each and all of them, made and issued by the defendants without proper and ordinary care and prudence, and without due examination, inquiry and proof into the mental and physical condition of plaintiff's health, and without due examination, inquiry and proof into the fact whether plaintiff was. sane or insane ; and that they were not made and issued, in form, substance and effect, in compliance with law, or in compliance with the requirements of said chapter 446 of the Laws of 1874, and were invalid ; and that the said arrest and confinement of the plaintiff, as a lunatic thereon, was a gross violation of duty and obligation on the part of the defendants towards the plaintiff, as a harmless, inoffensive citizen, and was a gross and culpable wrong and a false imprisonment, for which the defendants are liable to him in damages ; that, by means of the premises and of the facts of his case as herein stated and alleged, the plaintiff has sustained great damages at the hands of the defendants ; he has been publicly and unjustly, negligently and illegally certified by them to be a lunatic, and deserving confinement as such, and was, through their instrumentality, on such verified certificates and approval thereof, arrested and committed as a lunatic to said Albany Insane Asylum, and there confined for said period of thirteen days ; his character as a peaceful, harmless citizen has been, by such arrest and imprisonment, greatly maligned and injured ; his feelings have been grossly outraged, and he has suffered the keenest mental anguish thereby and therefrom ; and, besides, he has sustained other general damages and special damages to a large amount. Wherefore, the plaintiff

demands judgment against the defendants for $5,000 as damages, besides costs.

To this complaint the several defendants each severally demurred on the ground that it did not state facts constituting a cause of action.

*Colvin & Nevitt*, for the appellant.

*Harris & Rudd*, for the respondent Russell.

*Francis H. Woods*, for the respondent O'Leary.

*Herrick & Delehanty*, for the respondent Gould.

Landon, J. :

The statute respecting the care and custody of the insane (chap. 446, Laws of 1874), does not deprive the alleged lunatic of the right of trial by jury. It does, however, provide for his summary and temporary confinement "upon the certificate of two physicians, under oath, setting forth the insanity of such person;" but this confinement is "for the care and treatment" of the insane party. This confinement must not exceed "five days, unless within that time such certificate be approved by a judge," etc. Obviously these are humane provisions intended to secure proper care and treatment for the insane, and to protect third persons from their irresponsible violence. The judge "may institute inquiry and take proofs as to any alleged lunacy before approving or disapproving of such certificate, and * * * may, in his discretion, call a jury in each case to determine the question of lunacy." The defendant contends that "may," as here used, means "must," because the rights of the public and of third persons are concerned, and that there can be no relaxation of statutory safeguards in favor of liberty. Conceding the general rule to be as claimed, it is obvious from the nature of the case, and from the words of the statute, that the judge is vested with a discretion adequate to the exigency. Some cases are too plain to admit of doubt, others are doubtful. The judge must act as he thinks most wise under circumstances which sometimes must be painful, but leaving no doubt as to the propriety of prompt and decisive action, and at other times of such doubt and delicacy as to suggest every precaution the statute affords ;

but when summary action has been taken, and the alleged lunatic is confined upon the certificate of the physicians approved by the judge, the lunatic himself, or any friend in his behalf, "may, within three days after such order or decision, appeal therefrom to a justice of the Supreme Court, who shall thereupon stay his being sent out of the county, and forthwith call a jury to decide upon the fact of lunacy." (Sec. 11.) Such an appeal was taken in this case, and the jury pronounced the plaintiff sane, and he was thereupon discharged.

The plaintiff urges that by his confinement, until his discharge, he was deprived of his liberty, without due process of law or the judgment of his peers. (Const., art. 1, § 1.) A person charged with felony is first arrested and, upon examination before the magistrate, committed to jail to await the action of the grand jury. He may not be indicted, or, if indicted, may be acquitted upon trial. Meanwhile he lies in jail, awaiting his discharge upon the final judgment of the law that he is not guilty. In the absence of a malicious prosecution, it has never been alleged that he was deprived of his liberty without due process of law or the judgment of his peers. The State cannot take all steps at once, and when provision is made that they shall be taken one after another, with reasonable care and expedition, in the manner and form approved by experience and sanctioned by law, the individual, who, as it must sometimes happen, suffers a temporary deprivation of liberty, must necessarily remain without remedy. The State provides the best system its wisdom suggests, but so long as it must be administered by men, it cannot guarantee against occasional mistakes.

The defendant, the recorder, had the powers of a judge of a court of record. His approval of the certificate of the physicians was a judicial act. It was an act analogous to the issuing of a warrant for the arrest of an alleged criminal upon information verified by oath. If the information fills the requirements of the statute, the magistrate's jurisdiction is complete. But the information may be incomplete in fact; some essential specified in the statute may be omitted; the magistrate may not be learned in the law, or, if learned, not always sound in judgment; he looks at this information and decides that a case exists, when, in fact and in law, there is no case; he issues his warrant when he ought not, and the result is that a

man who has committed no crime, and against whom no crime is alleged, is arrested and temporarily deprived of his liberty. In one aspect of the case, the magistrate had no jurisdiction, because the law gives him no jurisdiction to issue a warrant unless it appears that an offense has been committed and there is reasonable cause to believe that the accused committed it. A judge, upon *habeas corpus*, ought to decide that the magistrate had no jurisdiction to issue the warrant. Why, then, cannot the magistrate be pursued by the injured individual? Because, when the information was presented to him, it was his duty to decide what his duty was respecting it. He had jurisdiction of that question, and his wrong decision upon it was a judicial error. He had a duty to perform, and the law does not punish him for a mistake in trying to do it right.

In *Lange* v. *Benedict* (73 N. Y., 35) the judge pronounced a sentence which he had no jurisdiction to pronounce, but he supposed he had, and it was his duty to decide whether he had or not. He had the statute for his guide, but he had to interpret the statute and he did not interpret it aright. But he had to decide, he was no mere volunteer; he made a mistake, but he made it in the discharge of his master's (the government's) business, and his wrongful act was the government's, not his own, and he incurred no personal liability.

No cause of action is stated in the complaint against the recorder. The charge of a lack of due and ordinary care and prudence adds no support to a charge of liability for judicial acts. Public policy forbids that a disappointed suitor should be clothed with such a weapon with which to smite or annoy a judge who decides against him.

The defendants, the physicians, were such experts as the statute authorizes to make the certificate of the plaintiff's insanity. No allegation is made in the complaint of a defect of a proper request or information, upon which they proceeded to examine the plaintiff and make their certificate, and none can be presumed. The physicians followed the forms of the law. Whether the reasons set forth by them in the certificate for their conclusion, that the plaintiff was insane, were sufficient or not, is immaterial. The presumption is that they set forth such reasons as in their opinion were sufficient, and such as appeared to them to be true in fact. But the complaint charges that the physicians made the certificate " without proper and ordinary care and prudence, and without due

examination, inquiry and proof into the fact whether plaintiff was sane or insane."

We think the physicians owed the plaintiff the duty of making the examination with ordinary care. Their duty must be measured by the trust which the statute reposes in them, and by the consequences flowing from its improper performance. They assumed the duty by accepting the trust. They are not judicial officers, but medical experts. They are not clothed with judicial immunity and are chargeable with that negligence which attaches to a professional expert who does not use the care and skill which his profession, *per se*, implies that he will bring to his professional work.

It is urged that the physicians are privileged by the statute, and that their certificates are privileged communications. Doubtless this is true if they discharge their duty with ordinary care; but in the absence of such care their privilege cannot protect them. Their privilege is, that so long as they do their duty with the care and skill the statute presumes and requires, they are not responsible to the plaintiff for the consequences, however harsh they may be, for, in such a case, the law afflicts the plaintiff; but when they do not use such care and skill, it is their personal negligence which afflicts him.

The remaining question is whether the complaint sufficiently alleges negligence upon the part of the physicians. They urge that facts are not stated, but only conclusions of law. We think, however, that the portion of the complaint above quoted, imputing negligence, is a statement of conclusions of fact. Plainly, if all the details were set forth, the sum of which would amount to the charge of negligence, the complaint would be open to the objection of pleading evidence. All the evidence may be set forth in a complaint without setting forth any case at all. The charge of negligence embraces the sum of all the evidence necessary to establish it, and is, therefore, a conclusion of fact.

The judgment of the Special Term is reversed as to the defendants, Russell and O'Leary, and their demurrer overruled, with costs of this court and of the court below, with the usual leave to withdraw the demurrer and answer on payment of costs; and is affirmed as to the defendant Gould, with costs.

LEARNED, P. J.:

I think that the meaning of the first article of chapter 446, Laws of 1874, cannot be understood without reference to some statutes which were in existence when it was passed, and some of which are in existence now.

The Revised Statutes (pt. 1, chap. 20, p. 634), is of the safe care and keeping of inmates. Section 1 provides that when a person is so far disordered in his senses as to endanger his own person or the person or property of others, if he has sufficient property to maintain himself, it is the duty of his committee to confine him. Section 2 provides that if such person is not of sufficient property the like duty rests on certain relatives, if they are able. Section 4 provides for the case of refusal or neglect, as aforesaid, or of want of means. It authorizes the overseers of the poor to apply to two justices. If they are satisfied it is dangerous to permit the lunatic to go at large, they are to issue their warrant to the constables and overseers, commanding them to apprehend and confine the lunatic. Section 12 provides that previous sections do not affect the power of the chancellor.

Chapter 135, Laws of 1842, section 20, provided that, under the statutes above cited, the lunatic should be sent, in ten days, to the lunatic asylum, or some other private or public asylum, etc.; and section 21 gave to any lunatic or his friend a right of appeal, in three days, to a judge, who might call a jury, and with the aid of two physicians decide on the fact, and either discharge or confirm the order. Section 22 forbade justices, superintendents and overseers, under the said title of the Revised Statutes, to order or approve without the evidence of two reputable physicians in writing.

This title of the Revised Statutes seems to be unrepealed. Whether the act of 1842 is repealed or not I need not inquire. It is enough to notice that these sections (20, 21 and 22) did not establish a system for the apprehension and confinement of lunatics, they only placed safeguards and restraints around the powers given by the Revised Statutes.

We now come to chapter 446, Laws of 1874. We shall find, in like manner, that while this statute in article 1 embodied several of the provisions of the act of 1842, it did not establish a system of apprehension and confinement, but imposed restrictions and safeguards on the power given by the Revised Statutes. Thus,

section 1, requiring the certificate of two physicians, is substantially section 22 of the act of 1842; sections 2 and 3 are only restrictions as to the character of the physicians. Section 12 requires certain relatives to confine such lunatic, if of sufficient ability. This is the same with section 1 of the title of the Revised Statutes, and applies to a dangerous lunatic, as is quite apparent. Section 6 gives the overseer of the poor a right to apply, in case of neglect of a committee, or of friends, to a judge; in accordance with section 4 of the title of the Revised Statutes. But it will be seen, on careful examination, that nowhere in the statute is authority given on the mere certificate of two physicians, approved by a judge, to apprehend and confine any one.

The Revised Statutes above cited place the duty of confining dangerous lunatics on the committee and on relatives; in case of neglect or inability, they place this duty on the overseers. The statute of 1874 puts the restriction that no confinement shall be made without the certificate provided for; but by no means declares that such certificate is sufficient authority. Now, if we look at the Revised Statutes, we shall see that it is not every lunatic who may be confined; it is one who is "furiously mad, or so far disordered as to endanger," etc. (§ 1); and this idea is continued in the act of 1874 (§§ 6, 8, 9, 11).

If we turn again to section 6 of the act of 1874, which gives overseers the right to act in case of neglect of the committee, etc., and then inquire when the committee, etc., have neglected their duty, we must turn to section 1 of the title of the Revised Statutes to learn what their duty is. And that section has just been cited; it is when the lunatic is "furiously mad," etc. It appears to me that the Revised Statutes wisely based the ground of confinement on danger to himself or others, and I see no authority to carry the restraint further than when such danger exists. I am, then, not able to hold that the certificates of two physicians, approved by a county judge, are of themselves authority to apprehend and confine a lunatic. Such certificates and approval contain no order or direction to any one. They are addressed to no one; they command nothing. If they authorize a jailer to act and apprehend and confine, they equally authorize any other person. And if we turn to section 2, which provides for the appeal, we shall find that if the

jury do not find the appellant sane, the "judge shall confirm the order for his being sent immediately to the asylum." What order can be confirmed where none exists?

I have gone over these statutes at length, because I think a dangerous laxity has prevailed. In this very case the plaintiff was not confined by his committee, for there was none, or by his relative, or on the application of the overseer of the poor; in fact, no person authorized to act originated the proceeding. There was no evidence that he had not sufficient means, and none that he was furiously mad or so far disordered in his senses as to endanger his own person, etc. It seems to me that the statutes do not place the right in the hands of any man who may assume it, to apprehend and confine an alleged lunatic, or to initiate proceedings for that purpose. I do not mean to say that the committee of a dangerous lunatic may not confine him. The Revised Statutes make that his duty. Before doing that he perhaps must obtain these two certificates and the judge's approval, although the old principles gave him full power over the lunatic after "office found." Nor do I deny the power of the relatives to do the same, having first obtained the certificates and approval, acting, I suppose, at their peril. But when none of these parties act, then the proceeding must be under section 6. There must be a decision of a judge that the lunatic is dangerous and a warrant accordingly.

I have stated these views, not because I dissent from the result reached by my brother LANDON. I agree with him that the act of the recorder was so far judicial that he is not liable to the plaintiff. I agree with him, also, that as this demurrer admits that the physicians were negligent, they are liable for their negligence, as they would be for negligence in any other matter of their practice. Of course, what may be proved on the trial we cannot say.

INGALLS, J.:

I agree with my associates that the complaint does not contain the statement of a cause of action against the defendant Gould, and that the order of the Special Term, which is to that effect, should be affirmed, with costs. A careful examination of the case has led me to the conclusion that the complaint is also defective in failing to state a legal cause of action against the other defendants,

Russell and O'Leary, and that the order of the Special Term should also be affirmed as to those defendants, with costs. In determining the question whether the last named defendants can be held liable under the facts stated in the complaint, a distinction should be recognized between the present action and one brought by a person against a physician for malpractice, based upon the ordinary relation of patient and physician, because in such an action there exists, at least, an implied agreement on the part of the physician, based upon a consideration derived from the patient, that he possesses adequate skill, and will faithfully apply it in the treatment of such patient; whereas, in the present case no such relation exists, and, consequently, it would seem no such obligation is imposed. Such defendants were physicians, but their relation to the proceeding by which the plaintiff was, for a few days, detained for medical treatment, was created by chapter 446 of the Laws of 1874, entitled "An act to revise and consolidate the statutes of the State relating to the care and custody of the insane; the management of the asylums for their treatment and safe keeping, and the duties of the State commissioner in lunacy." The legislature seems to have intended to create, by such statute, a complete system in regard to the care and treatment of the insane, without regard to whether such malady had developed in the patient a type which was apparently temporary or permanent, mild or violent. The first section of such act provides as follows: " Section 1. No person shall be committed to or confined as a patient in, any asylum, public or private, or in any institution, home or retreat, for the care and treatment of the insane, except upon the certificate of two physicians, under oath, setting forth the insanity of such person; but no person shall be held in confinement in any such asylum *for more than five days*, unless within that time such certificate be approved by a judge or justice of a court of record of the county or district in which the alleged lunatic resides; and said judge or justice may institute inquiry, and take proofs as to any alleged lunacy before approving or disapproving of such certificate; and said judge or justice may, *in his discretion*, call a jury in each case to determine the question of lunacy."

The second section contains the following: " Section 2. It shall not be lawful for any physician to certify to the insanity of any

person for the purpose of securing his commitment to any asylum, unless said physician be of reputable character, a graduate of some incorporated medical college, a permanent resident of the State, and shall have been in the actual practice of his profession for at least three years. And such qualifications *shall be certified to by a judge of any court of record.* No certificate of insanity shall be made except after a personal examination of the party alleged to be insane, and according to forms prescribed by the State commissioner in lunacy, and every such certificate shall bear date of not more than ten days prior to such commitment." These defendants had each received from the county judge of Albany county a certificate of qualification as prescribed by such statute, and were, therefore, authorized to make the examination and to certify in regard to the mental condition of the plaintiff, whether the type of insanity with which the plaintiff was afflicted appeared mild or violent at the time, as it was within their province to determine whether restraint and treatment was necessary to prevent the development in the plaintiff of a more violent and dangerous type of such disease. The defendants having derived their authority to act in the premises from such statute, and their co-operation in carrying out the provisions thereof being a part of the machinery by which such system became efficient, the acts of the defendants in making and certifying such examination should be regarded in their nature official, rather than merely professional; and considering the character of the duties which they performed and the manner they were required to discharge the same, I think it may be properly held that they acted in at least a *quasi* judicial capacity. They were called upon to ascertain and determine whether the plaintiff was insane to such an extent as to require restraint and treatment, and, in determining such question, they were compelled, by such statute, to make a personal examination of the plaintiff, and from the evidence thus disclosed, and such other facts and circumstances as were brought to their knowledge, to conclude in regard to the mental condition of the plaintiff, and the necessity of subjecting him to restraint and treatment, and they were required to weigh the evidence and to deduce therefrom a conclusion in regard to the mental condition of the plaintiff; and in the event that they adjudged him insane, they were required by such

statute to make a certificate, under oath, setting forth the insanity of such person.

It will be perceived, by referring to the statute, that upon the determination of such physicians and the certificate which they are authorized to make, the person so adjudged insane may be restrained for the purpose of treatment, for a period not exceeding five days, without the approval of a judge or justice of a court of record. So, it would seem, that by force of such statute, such certificate may be regarded in a certain sense a mandate by which the determination of such physicians may be carried into effect. It seems, therefore, but reasonable to conclude that the legislature intended to confer upon such physicians powers exceeding those possessed by a mere expert, or by a physician in the ordinary treatment of a patient under a private retainer. It will be further perceived that such examination and the certificate issued thereupon are, by force of such statute, made the basis for the action of the judge or justice, whose approval of such certificate is by the statute required in order to continue the detention and treatment of such insane person beyond five days. In the present case the certificates were presented to the defendant Gould, who was then recorder of the city of Albany, and approved by him April 15, 1887, and before the plaintiff was arrested and committed as an insane person. It would seem that the certificates made by the defendants should also be regarded as privileged communications. They were intended for, and actually constituted, the basis upon which the recorder acted. (*Perkins* v. *Mitchell,* 31 Barb., 462.) In that case Justice EMOTT, at page 466, remarks: " To give to a statement made by a physician, which would otherwise be criminatory and libelous, a privileged character, he must not only utter it as a medical man, but it must be made in the discharge of a duty and to a person who has, or is, engaged in a corresponding duty in reference to the subject-matter." The learned justice cites, in support of the principle thus enunciated, *Harrison* v. *Bush* (32 Eng. L. and Eq. Rep., 173); *Van Wyck* v. *Aspinwall* (17 N. Y., 190). The doctrine thus stated seems applicable to the case under consideration, and to shield the defendants, Russell and O'Leary, from liability in this action, in which no malice is alleged. (See, also, *Bradley* v. *Fisher,* 13 Wall., 335.)

The defendant Gould in his official capacity approved of such certificates, and for such act he is prosecuted by the plaintiff. As such recorder he possessed all the powers of a justice of the Supreme court at chambers. (Laws of 1872, chap. 284, § 10.) In approving of such certificate he was required to examine them, and to consider and pass upon the facts therein stated, with the view to determine their sufficiency, and to conclude in regard to the necessity of subjecting the plaintiff to restraint and treatment as an insane person. Manifestly, in discharging such duty, he was required to exercise judgment and discretion in passing upon the merits of such application, and in discharging such duty he acted in a judicial capacity. It is insisted that the statute made it incumbent upon the recorder to summon a jury to pass upon the insanity of the plaintiff; such is not the case. The statute provides as follows: " may, in his discretion, call a jury in each case to determine the question of lunacy." It was discretionary with him whether or not to call such jury, as the statute is clearly permissive and not mandatory. The wisdom displayed in so framing said statute is apparent, as in some cases the facts presented would doubtless disclose a case so clear that the aid of a jury would be unnecessary, and the delay and the expense consequent upon calling them should be avoided; while in other cases a degree of doubt might exist, which would render it quite proper to resort to the jury. Considering the nature of the proceeding, the requirements of such statute, the characters of the duties which it imposed upon such defendants, and the manner the duties were required to be performed by them, I am persuaded that all of said defendants should be regarded as having acted so far, in a judicial capacity, as to be entitled to immunity from civil prosecution; especially so, as the complaint contains no charge of malice against either of the defendants. In view of the law upon this subject, as it exists, it seems allowable to hold that such protection extends not only to the judge while engaged in the trial of a civil action in court, but also to a magistrate, or other person, when engaged in conducting a proceeding which required the performance of duties judicial in character; and when the proceeding has been created by the statute which authorized such magistrate, or other person, to discharge the duty, and while acting within the limits of the authority conferred.

In *Perkins* v. *Mitchell* (*supra*, 471), Justice EMOTT further remarks upon this subject: "This is not confined to trials of civil actions or indictments, but includes every proceeding before a competent court or magistrate in the due course of law or the administration of justice, which is to result in any determination or action of such court or officer." (*Weaver* v. *Devendorf*, 3 Den., 117.) Judge BEARDSLEY says, at page 120 : "The assessors were judges, acting clearly within the scope and limit of their authority. They were not volunteers, but the duty was imperative and compulsory ; and acting as they did in the performance of a public duty, *in its nature judicial*, they were not liable to an action, however *erroneous or wrongful* their determination may have been. * * * But I prefer to place the decision on the broad ground that no *public officer* is responsible in a civil suit for a judicial determination, however erroneous it may be and however *malicious* the motive which produced it. Such acts, when corrupt, may be punished criminally. * * * The rule extends to judges, from the highest to the lowest; to jurors, and to all *public officers*, whatever name they may bear in the exercise of judicial power." The opinion expressed in that case received the approval of the entire court, and seems to have a direct and forcible bearing upon the case we are considering. In that case the defendants were *assessors*, deriving their authority from a statute. In this case the defendants derive their authority from a statute, and, I think, the duties which they were required to perform were as clearly judicial in their nature as were those which devolved upon the assessors in the case referred to. Neither the assessors or the defendants in this action were compelled to accept the office, yet, having accepted they were bound to discharge the duties thereof. In determining whether an act is judicial in its character, we are to regard the nature of such act rather than the place where it was performed. The complaint not only omits to charge either of the defendants with malice, but fails to allege that either participated in such arrest or detention, other than by the making and approving of such certificates; and if such defendants had jurisdiction of the subject-matter, and acted in a judicial or *quasi* judicial capacity, they cannot be held liable in this action. (*Hunt* v. *Hunt*, 72 N. Y., 218.) At page 229 Judge FOLGER remarks : "So that there is a more

general meaning to the phrase 'subject-matter,' in this connection, than power to act upon a particular state of facts. It is the power to act upon the general and, so to speak, the abstract question, and to determine and adjudge whether the particular facts presented call for the exercise of the abstract power." The complaint contains sufficient to show by what authority the defendants acted, and the source from which it was derived and the extent thereof, and the character of the duties which they performed.

The complaint contains the following statements: "And the plaintiff further alleges, on information and belief, that his said arrest and imprisonment was caused and secured by the defendants by means of certain certificates and approval thereof, prepared and issued by them against the plaintiff for his arrest, as follows, that is to say, the certificates of said Selwyn A. Russell and Daniel V. O'Leary, subscribed to and made by them under oath before John Gutmann, police justice and justice of the peace of the city and county of Albany, on the 14th day of April, 1887, certifying and declaring, in effect, that they were residents of the city of Albany, in the county of Albany, and were graduates of the Albany Medical College, and had practiced as physicians, the said Selwyn A. Russell for ten years, and the said Daniel V. O'Leary for fifteen years, and that their qualifications as medical examiners in lunacy had been duly attested and certified by Hon. John C. Nott, county judge of the county of Albany; that on the 13th day of April, 1887, they personally examined the plaintiff, said Alfred Ayres, of the city of Albany, in said county; that he was a man about sixty-three years of age, was married, and was by occupation a carpenter, and that he was insane and a proper person for care and treatment under the provisions of chapter 446 of the Laws of 1874; that the grounds whereon they formed this opinion, separately stated, although they acted in concert together, were substantially the same, viz., that plaintiff was under delusive beliefs with respect to his wife, and under delusive ideas with respect to his wife and daughter, and that there were no reasons for believing that such delusions, or any of those ideas, were founded on fact. And the plaintiff alleges, on information and belief, that the said defendant, Anthony Gould, as recorder of the city of Albany, did, on the 15th day of April, 1887, fully and formally accept, adopt, indorse and approve the

said verified certificates of said Selwyn A. Russell and Daniel V. O'Leary, and their said opinions, and the said grounds thereof, as sufficient in matter of fact and in form of execution for the arrest and confinement of the plaintiff as insane and a proper person for care and treatment under the provisions of chapter 446 of the Laws of 1874." Such statement of facts, considered in connection with the provisions of the statute under which the defendants acted, and which is referred to by the plaintiff in his complaint, are sufficient to show that the defendants had acquired jurisdiction of the subject-matter, and were, therefore, authorized to discharge the duties which they performed, which were judicial in their character, and consequently the plaintiff failed to state a cause of action entitling him to recover herein against the defendants or either of them. (*Stewart* v. *Hawley*, 21 Wend., 552; *Bradley* v. *Fisher*, *supra*; *Lange* v. *Benedict*, 73 N. Y., 12; *Harrison* v. *Clark*, 4 Hun, 685; *Harmon* v. *Brotherson*, 1 Denio, 537; *Hall* v. *Munger*, 5 Lans., 105; *Bumstead* v. *Read*, 31 Barb., 665.)

The following allegation in the complaint indicates the theory upon which the plaintiff seems to rely to maintain this action: 2. "And the plaintiff further alleges, on information and belief, that said verified certificates and said approval thereof, in manner and form aforesaid, were each and all of them made and issued by the defendants *without proper and ordinary care and prudence*, and without due examination, inquiry and proof, into the mental and physical condition of plaintiff's health, and without due examination, inquiry and proof into the fact whether the plaintiff was sane or insane; and that they were not made and issued in form, substance and effect, in compliance with law, or in compliance with the requirements of said chapter 446 of the Laws of 1874, and were invalid." Such statements are very general, and partake more of the characteristics of conclusions than of the statement of material facts, and are more objectionable from the consideration that they constitute the gravamen of the pleading. Such statements seem to imply that the defendants exercised a certain degree of care and prudence, but not to the extent which the plaintiff deemed necessary according to the standard of duty which he has chosen to adopt. If the defendants had acquired jurisdiction of the subject-matter, and acted judicially in discharging their duties, the law

exempts them from liability in a civil action, even though they may have acted without exercising proper and ordinary care and prudence and without due examination and inquiry in regard to the mental and physical condition of the plaintiff. (*Lange* v. *Benedict*, 73 N. Y., 12; *Weaver* v. *Devendorf, supra; Cunningham* v. *Bucklin*, 8 Cow., 178.) It would strike the judicial mind as something novel to have exhibited, as the statement of a cause of action in a complaint, that a judge while engaged in the trial of an action in court had decided a question of fact, or of law, without due examination and inquiry, and without the exercise of ordinary care and prudence, and upon such a statement to claim an award of damages. And yet the complaint herein amounts to little more, when considered in the light of the law applicable to the subject involved. The demurrers interposed by the defendants do not help the plaintiff's case by way of admissions, as only facts which are material and well pleaded are admitted by a demurrer. The contention of the plaintiff does not seem sound, that the facts alleged in the complaint are to the effect that he was, through the acts of the defendants, deprived of his liberty without due process of law.

The legislature possessed the power to provide by statute for the care, custody and treatment of the insane, and to prescribe the method by which it should be accomplished. It has been suggested that the defendants should seek their vindication at the hands of the jury, if they are entitled to it. Certainly not until the plaintiff alleges in his complaint a valid cause of action against them. If judges and other public officers, whose duties are in their nature judicial, are to be subjected to civil prosecution by any litigant, or other person who is dissatisfied and incensed by the action of such officers, it may be feared that the effect will soon be to prevent or impair fearless, independent and efficient discharge of duty by such officials, not so much from the apprehension that damages would ultimately be recovered against them, but on account of the vexation and expense which would attend such a prosecution. It is obvious that the policy of the law is opposed to such action.

Judgment sustaining demurrer affirmed as to defendant Gould, with costs, and reversed as to defendants Russell and O'Leary, and judgment for plaintiff against them rendered, with costs, with leave to withdraw demurrer and answer over on payment of costs.